

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE DEC 2 4 2014

Madsen, C. J.

CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on December 24, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. 89448-5 |
| | ) | |
| EDDIE LEE DAVIS, | ) | |
| | ) | |
| Petitioner. | ) | |
| _____ | ) | EN BANC |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | Filed    DEC 2 4 2014 |
| | ) | |
| LETRECIA NELSON, | ) | |
| | ) | |
| Petitioner. | ) | |
| _____ | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS E. DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

FAIRHURST, J.—In November 2009, Maurice Clemmons shot and killed four Lakewood police officers. Clemmons contacted Eddie Lee Davis and Letrecia Nelson shortly after the murders, and based on their actions following that contact, Davis and Nelson were convicted of rendering criminal assistance and possession of a stolen firearm. Davis was also convicted of unlawful possession of that firearm. This opinion, which has four votes, would hold that the State presented sufficient evidence to support the firearm possession convictions. However, that is not the opinion of the majority. On the second issue, the court with eight votes finds that the trial court's imposition of an exceptional sentence as to Davis' and Nelson's convictions for rendering criminal assistance is not legally justified. Thus, the result of the three opinions of the court is to reverse the Court of Appeals and remand for further proceedings.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts of the murders are notorious and undisputed. On Sunday, November 29, 2009, Clemmons entered a coffee shop just before 8:00 a.m. with two handguns and began shooting at four Lakewood police officers, fatally wounding three. The fourth officer struggled with Clemmons and shot Clemmons once in the side, but Clemmons wrested the fourth officer's gun from him, fatally shot him, and left with

the stolen gun. A Seattle police officer shot and killed Clemmons on December 1, 2009 when Clemmons attempted to draw the stolen gun on the officer.

This case concerns the events of November 29, 2009 that occurred after Clemmons left the coffee shop.[1] There was some conflicting evidence at trial, but based on the nature of the issues presented for review, the evidence is taken in the light most favorable to the State, as discussed below. More specific discussion of the events is included in our analysis where relevant.

Clemmons fled the coffee shop in a pickup truck driven by another. After abandoning the truck, Clemmons went to Davis' home, requested a ride to a house in Auburn, and said he had been shot while killing four police officers.

Davis drove Clemmons to the Auburn house, which was Nelson's home. Clemmons banged on the window and then knocked on the door, saying he had been shot. Nelson let Clemmons inside, along with Davis. Clemmons told Nelson he had killed four police officers, been shot in the process, and stolen one officer's gun. At Clemmons' request, he was given fresh clothing and help treating his gunshot wound. Nelson put some clothes and the stolen gun in a shopping bag that was left on a counter. Just before leaving, Clemmons asked where the gun was and Davis replied that it was in the bag on the counter and gave the bag to Clemmons.

---

[1]Another individual, Douglas Davis, was present during many of these events but is not a party to this case on review. In this opinion, "Davis" refers to petitioner Eddie Lee Davis.

Davis and Nelson were convicted of first degree rendering criminal assistance and possession of a stolen firearm. Davis was also convicted of second degree unlawful possession of a firearm. The jury found by special verdict the aggravating factor that "[t]he offense involved a destructive and foreseeable impact on persons other than the victim," and the trial court imposed exceptional sentences for the rendering criminal assistance convictions.[2] RCW 9.94A.535(3)(r).[3]

Both Davis and Nelson argue that the State did not present sufficient evidence to support the jury's determination that they possessed the stolen gun. Both also argue that their exceptional sentences for rendering criminal assistance are not legally or factually justified. We granted Davis' and Nelson's petitions for review. *State v. Davis*, 179 Wn.2d 1014, 318 P.3d 280 (2014). We denied the State's cross petition.

## ISSUES

I.      Does sufficient evidence support Davis' and Nelson's convictions relating to possession of a firearm?

II.     Are the exceptional sentences for rendering criminal assistance factually and legally justified?

---

[2]The Court of Appeals reversed the application of this aggravating factor to the other charges, and the application of another aggravating factor as to all charges. We do not review those holdings.

[3]While several of the statutes at issue have been amended since the time of the offenses, none of those amendments are material to our decision, so we cite the current versions.

## ANALYSIS

### I. The State presented sufficient evidence of firearm possession

The firearm at issue here is the gun Clemmons stole from one of the officers he shot and killed. Davis and Nelson argue the evidence presented at trial showed, at most, their proximity to and momentary handling of the stolen gun and so the evidence is insufficient to support the essential element of possession for their convictions for possessing a stolen firearm, RCW 9A.56.310, and Davis' conviction for unlawful possession of a firearm, RCW 9.41.040(2)(a). We disagree.

Our review on a challenge to the sufficiency of the evidence supporting a criminal conviction is highly deferential to the jury's decision, and we do not consider "questions of credibility, persuasiveness, and conflicting testimony." *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 364, 256 P.3d 277 (2011).

> [T]he test is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.

*State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006) (citations omitted).

A person actually possesses something that is in his or her physical custody, and constructively possesses something that is not in his or her physical custody but is still within his or her "dominion and control." *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). For either type, "[t]o establish possession the prosecution must

prove more than a passing control; it must prove actual control." *State v. Staley*, 123 Wn.2d 794, 801, 872 P.2d 502 (1994). The length of time in itself does not determine whether control is actual or passing; whether one has actual control over the item at issue depends on the totality of the circumstances presented. *Id.* at 802.

The evidence at trial, construed most strongly in the State's favor, is sufficient to support a holding that both Nelson and Davis had actual control over and constructively possessed the stolen gun. When Clemmons arrived at Nelson's home, he had a bleeding gunshot wound and lay down on the living room floor. Nelson provided some alcohol or peroxide, and another person, not Davis or Nelson, helped Clemmons clean and treat the wound. Clemmons also changed his shirt. In the meantime, Nelson retrieved a shopping bag and put the stolen gun inside it. Clemmons was at Nelson's home for about 15 minutes. Just before leaving, Clemmons asked Davis, "'Where's the gun?'" or "'Where is the gun at?'" 14 Verbatim Report of Proceedings at 1555. Davis responded, "'It's in the bag.'" *Id.* Davis then handed Clemmons the bag on the counter containing clothes and the stolen gun.

In light of the totality of the circumstances and our deferential standard of review, the State presented sufficient evidence to support a finding that Clemmons temporarily relinquished control over the stolen gun to Davis and Nelson while his wound was treated and he changed clothes. There was no testimony that Clemmons

made any specific requests or orders as to what should be done with the stolen gun while he was at Nelson's home, and he did not even know where the gun was until he was ready to leave about 15 minutes later. It is reasonable to infer that someone else decided what to do with the gun and that the decision-makers were Nelson and Davis because Nelson retrieved the shopping bag and put the gun inside it and Davis immediately responded when Clemmons asked where the gun was. Furthermore, both Nelson and Davis retained the ability to take further actions as to the gun until the time Davis gave it back to Clemmons because they knew where it was and Clemmons did not. That is actual control sufficient to establish constructive possession.[4] We would affirm Davis' conviction for second degree unlawful possession of a firearm and Davis' and Nelson's convictions for possession of a stolen firearm.

II.    Davis' and Nelson's exceptional sentences are not legally justified

Davis and Nelson were given exceptional sentences for their rendering criminal assistance convictions based on the aggravating factor, found by the jury, that those crimes "involved a destructive and foreseeable impact on persons other than the victim." RCW 9.94A.535(3)(r). Exceptional sentences are intended to impose additional punishment where the particular offense at issue causes more

---

[4]We need not decide whether Nelson or Davis also had actual possession of the stolen gun, but we note that is a closer question because the evidence does not indicate that either Nelson or Davis physically handled the gun for more than a brief moment.

damage than that contemplated by the statute defining the offense. In that situation, the standard penalty for the offense is insufficient and an exceptional sentence based on a statutory aggravating factor found by the jury remedies that insufficiency. *State v. Stubbs*, 170 Wn.2d 117, 124-25, 240 P.3d 143 (2010); RCW 9.94A.535. We review the meaning and applicability of a statutory aggravating factor as a matter of law. *Stubbs*, 170 Wn.2d at 123-24; RCW 9.94A.585(4)(a). We hold that the aggravating factor at issue cannot apply to rendering criminal assistance, so the exceptional sentences imposed on Davis and Nelson are not legally justified.

A.    The general public is the victim of the crime of rendering criminal assistance

The State alleged and the jury found that Davis' and Nelson's rendering criminal assistance to Clemmons "involved a destructive and foreseeable impact on persons other than the victim." RCW 9.94A.535(3)(r). The State argues those other persons are the families of the police officers Clemmons killed. To determine whether this aggravating factor applies, we first consider who the victim of rendering criminal assistance is, and we begin with the statute defining the offense:

> [A] person "renders criminal assistance" if, with intent to prevent, hinder, or delay the apprehension or prosecution of another person who he or she knows has committed a crime . . . he or she:
> (1) Harbors or conceals such person; or
> (2) Warns such person of impending discovery or apprehension; or
> (3) Provides such person with money, transportation, disguise, or other means of avoiding discovery or apprehension; or

8

(4) Prevents or obstructs, by use of force, deception, or threat, anyone from performing an act that might aid in the discovery or apprehension of such person; or

(5) Conceals, alters, or destroys any physical evidence that might aid in the discovery or apprehension of such person; or

(6) Provides such person with a weapon.

RCW 9A.76.050. The degree of the offense depends on the underlying crime. RCW 9A.76.070(1), .080(1), .090(1).

Based on this plain language, rendering criminal assistance arises from actions intended to help an offender escape apprehension or prosecution and not from actions intended to cause or actually causing direct injury[5] to any person. Only one of the alternative means by which one can render criminal assistance, RCW 9A.76.050(4), even contemplates actions taken against a third party, and the harm contemplated by the statute is still the harm created by helping the offender, not by harming the third party. Clearly, rendering criminal assistance is a crime because it undermines the ability of the government to perform its duties to apprehend and prosecute offenders. The government cannot be the victim of rendering criminal assistance because it apprehends and prosecutes offenders not on its own behalf, but for the sole benefit of the people. WASH. CONST. art. I, § 1. There is no other possible

---

[5]For purposes of the Sentencing Reform Act of 1981, chapter 9.94A RCW, the term "'[v]ictim'" is defined as "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged," RCW 9.94A.030(53), "[u]nless the context clearly requires otherwise," RCW 9.94A.030. In the context of RCW 9.94A.535(3)(r), the standard definition makes clear sense—the victim of the offense is injured as a direct result of the crime, while persons other than the victim suffer a destructive impact caused by the crime in an indirect but foreseeable way.

9

particular victim based on the plain language of the statute. We hold that the victim of rendering criminal assistance is the general public.

> B.    RCW 9.94A.525(3)(r) does not apply to the crime of rendering criminal assistance as a matter of law

RCW 9.94A.535(3)(r) applies where there is "a destructive and foreseeable impact on persons *other than* the victim." (Emphasis added.) Because rendering criminal assistance victimizes the general public, every member of the public is part of the victim class. There is no "other."

The State would have us hold that for crimes whose victim is the general public, RCW 9.94A.535(3)(r)'s reference to "other than the victim" actually refers to a particular person within the community or to a particular segment of the general public. The statute simply does not say that. While this court has issued opinions discussing "community impact" on a particular segment of the general public as an aggravating factor, those opinions predate RCW 9.94A.535(3)(r). *State v. Jackson*, 150 Wn.2d 251, 274, 76 P.3d 217 (2003); *State v. Johnson*, 124 Wn.2d 57, 73-76, 873 P.2d 514 (1994). If the legislature had intended RCW 9.94A.535(3)(r) to apply wherever the impact of an offense is unusually substantial as to a particular portion of the general public, it could have referenced the general public or the community in the statutory language. It did not. We also note that our opinions in *Jackson* and *Johnson* involved offenses with clear, particular victims or intended victims—first

degree murder and assault in the course of a drive-by shooting, respectively—and so are materially distinguishable anyway.

The State contends that because every criminal offense is an offense against the general public, the approach we adopt today would mean RCW 9.94A.535(3)(r) could never apply to any crime. It is true that what makes a wrongful act criminal, rather than merely tortious, is the legislature's determination that the act is injurious to the public as a whole. *E.g.*, 22 C.J.S. *Criminal Law* § 2 (2006). That does not mean we must ignore the obvious fact that some criminal offenses have particular victims, while others do not—rendering criminal assistance does not.

Finally, the State argues that in setting the standard range sentence for first degree rendering of criminal assistance, the legislature contemplated one murder, not four, and that "[t]he murder of a law enforcement officer has a greater detrimental impact on the public's sense of security" than would the murder of a civilian. Suppl. Br. of Resp't at 23. Those arguments might have force as applied to other statutory aggravating factors or aggravating factors the legislature might consider enacting, but they have no relevance to the aggravating factor at issue here. We will not affirm an exceptional sentence unless it is legally justified by the aggravating factor actually charged and found by the jury.

CONCLUSION

We would hold that the State introduced sufficient evidence at trial to support Davis' and Nelson's convictions for possession of a stolen firearm and Davis' conviction for second degree unlawful possession of a firearm, but that is not the decision of the court. We do hold the aggravating factor in RCW 9.94A.535(3)(r) cannot justify an exceptional sentence for rendering criminal assistance as a matter of law. The result of the three opinions of the court is to reverse the Court of Appeals and remand for further proceedings.

_Fairhurst, J._

WE CONCUR:

_Johnson, J._

_González, J._

_Georg McCloud, J._

No. 89448-5

WIGGINS, J. (concurring in part, dissenting in part)—I concur in the majority opinion only as to the holding that the exceptional sentences imposed for Eddie Davis's and Letricia Nelson's convictions for rendering criminal assistance are not legally justified.

I concur in the dissent to the extent that it would hold that the evidence was insufficient to sustain Davis's and Nelson's firearm possession convictions.

I would reverse the Court of Appeals on both issues and remand for resentencing.

_Wiggins, J._

_Owens, J._

_Ellington, J.P.T._

_Madsen, C.J._

*State v. Davis (Eddie) and Nelson (Letricia)*

No. 89448-5

STEPHENS, J. (dissenting)—I disagree with the lead opinion's resolution of both issues before the court. I would reverse Eddie Davis's and Letricia Nelson's firearm possession convictions because the evidence does not show they actually or constructively possessed the weapon that Maurice Clemmons brought into Nelson's home. At most, they had a "passing control," which is insufficient under our precedent. As to their convictions for rendering criminal assistance, the sentencing court properly imposed exceptional sentences based on the jury's finding that the offense had a destructive and foreseeable impact on identifiable individuals, which was greater than the impact on society as a whole. For these reasons, I respectfully dissent.

I.    Sufficient Evidence Does Not Support Nelson's and Davis's Convictions for Constructive or Actual Possession

The lead opinion finds Davis and Nelson had constructive possession of Clemmons's gun and so does not reach the issue of actual possession. Lead opinion

at 7 n.4. Evidence sufficiently supports a "finding of guilt if, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *State v. Rose*, 175 Wn.2d 10, 14, 282 P.3d 1087 (2012). Taking the evidence in a light most favorable to the State and admitting all reasonable inferences, I do not think a properly instructed jury could find either constructive or actual possession in this case.

A. Constructive Possession

To determine constructive possession a court examines whether, under the totality of the circumstances, the defendant exercised dominion and control over the item in question. *State v. Partin*, 88 Wn.2d 899, 906, 567 P.2d 1136 (1977), *overruled on other grounds by State v. Lyons*, 174 Wn.2d 354, 275 P.3d 314 (2012). While the ability to immediately take actual possession of an item can establish dominion and control, mere proximity to the item by itself cannot. *Cf. State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002); *State v. Spruell*, 57 Wn. App. 383, 387, 788 P.2d 21 (1990). Factors supporting dominion and control include ownership of the item and, in some circumstances, ownership of the premises. But, having dominion and control over the premises containing the item does not, by itself, prove constructive possession. *State v. Tadeo-Mares*, 86 Wn. App. 813, 816, 939 P.2d 220 (1997).

*Partin* provides an example of sufficient indicia of premises control. In *Partin* the defendant regularly parked his motorcycle on the premises, received phone calls

there, stored personal documents and effects on the premises, and acted as vice president of a club operating on the premises. 88 Wn.2d at 907. These facts showed that the defendant exercised dominion and control over the premises and therefore constructively possessed drugs found on the premises. *See also State v. Echeverria*, 85 Wn. App. 777, 784, 934 P.2d 1214 (1997) (holding the defendant constructively possessed a gun under his car seat with the barrel visible but did not constructively possess a throwing star completely concealed by the seat).

*State v. Callahan*, on the other hand, provides an example of insufficient evidence to support constructive possession. 77 Wn.2d 27, 459 P.2d 400 (1969). In that case, the defendant was temporarily residing on a houseboat, was in close proximity to the drugs, and admitted to handling the drugs momentarily. *Id.* at 31. We held that there must be substantial evidence to show dominion and control in order to find constructive possession; we found the defendant's mere proximity to and momentary handling of the drugs was not sufficient to establish dominion and control. *Id.* at 29; *see also Spruell*, 57 Wn. App. at 388; *State v. Mathews*, 4 Wn. App. 653, 656, 484 P.2d 942 (1971).

In this case, no evidence showed that Davis or Nelson exercised sufficient control over the gun. The Court of Appeals reasoned that they constructively possessed the gun by placing it in a shopping bag and by carrying the bag containing the gun from the kitchen to the living room and handing it to Clemmons. The lead opinion echoes this mistaken understanding of constructive possession and conflates

actual possession with constructive possession. The situation here more closely resembles the lack of dominion and control we addressed in *Callahan* because neither Davis nor Nelson asserted any interest in the gun. Instead, they briefly handled the item for Clemmons, the true possessor of the gun.

The lead opinion relies heavily on the fact that Clemmons asked where the gun was. It reasons that because Davis and Nelson could have taken "further actions as to the gun," they therefore had actual control, while Clemmons did not. Lead opinion at 7. I disagree. While the State is entitled to all favorable inferences, we are not required to ignore unfavorable facts. Clemmons arrived at Nelson's home in an atmosphere of chaos—covered in blood, pounding on doors and windows, making demands for assistance, and admitting to killing four armed police officers. The evidence at trial revealed Clemmons's tendency to be "in control of his family members" and others, 6 Verbatim Report of Proceedings (VRP) (Nov. 9, 2010) at 372, along with his reputation of being "intimidating." 12 VRP (Nov. 22, 2010) at 1424. The question of whether Davis and Nelson exercised dominion and control over the gun must be considered in this context.

The jury's deliberations are not entirely opaque in this case. The jury submitted a question to the court, asking, "'Does being in the same room with an item equate to the immediate ability to take that item?'" 17 VRP (Dec. 6, 2010) at 1910. It was told to reread the instructions, which arguably allowed the jury to conclude that the defendants' mere presence in a room with the gun constituted

actual control over the gun and therefore Davis and Nelson constructively possessed it.

Washington's civil forfeiture statute provides a useful comparison. RCW 69.50.505.[1] There could be no argument that these facts would authorize civil forfeiture of Nelson's house if we replaced "stolen gun" in this case with "drugs."[2] Under that statute, the State could not seize the house because subsection (1)(h)(i) provides that property may not be forfeited by reason of any act committed without the owner's knowledge or consent. There is no evidence that Nelson consented to Clemmons bringing the gun into her home. The State must also prove a "substantial nexus exists between commercial production or sale of the controlled substance and the real property." RCW 69.50.505(1)(h). No nexus between Nelson's house and the stolen firearm existed here. This comparison reveals that the State could not seize Nelson's home under these facts, even stretching them in the State's favor. There is no indication that the legislature intended to make it easier to prosecute individuals criminally for conduct that does not even establish a civil claim.

I would hold that the evidence is insufficient to establish constructive possession of the firearm by Davis or Nelson.

---

[1] RCW 69.50.505 allows certain property to be subject to seizure and forfeiture. Subsection (1)(h) provides that real property may be seized that is being used with the knowledge of the owner for any process involving the manufacture and distribution of any controlled substance.

[2] I use drugs as an example because it applies to real property. RCW 10.105.010—which forfeits property used to aid or abet in the commission of a felony—applies only to personal property, not real property.

## B. Actual Possession

Actual possession means physical custody of an item but does not include "passing control which is only a momentary handling."[3] *Callahan*, 77 Wn.2d at 29. The lead opinion concedes there is no evidence that either Davis or Nelson "handled the gun for more than a brief moment." Lead opinion at 7 n.4. Accordingly, *Callahan* should be controlling. The holding in *State v. Staley*, 123 Wn.2d 794, 872 P.2d 502 (1994), does not, as the Court of Appeals implied, "clarif[y]" *Callahan* out of existence. *State v. Davis*, 176 Wn. App. 849, 864, 315 P.3d 1105 (2013). More accurately, *Staley* clarifies that when considering "momentary handling" during an actual possession inquiry, the quality of the control matters more than the duration of the control. *Staley*, 123 Wn.2d at 801; *see State v. Summers*, 107 Wn. App. 373, 386, 28 P.3d 780 (2001). *Callahan* remains controlling authority for the proposition that a defendant's handling of contraband shows only momentary or passing control, which is insufficient to prove actual possession. Furthermore, *Callahan* notes that consideration should be given to the ownership of the item, as ownership can carry the right of dominion and control with it—in this case, Clemmons was the true possessor, or "owner," of the gun. 77 Wn.2d at 31.

Under our precedent, Davis and Nelson had only passing possession of Clemmons's firearm. The evidence shows that Nelson put the gun into a shopping bag on the counter and Davis later handed the bag to Clemmons. Clemmons

---

[3] "Passing" is "the act of one that passes" or "having a brief duration." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1651 (2002).

remained on the premises the entire time and immediately after cleaning his gunshot wounds and changing his shirt demanded his gun.

I would reverse the Court of Appeals and find the evidence was insufficient to prove actual or constructive possession of the firearm by either Nelson or Davis. Accordingly, I would reverse the convictions containing possession as an element.

## II. The Destructive Impact Aggravator Properly Applies to the Sentences for Rendering Criminal Assistance

The trial court imposed exceptional sentences on both petitioners' convictions for rendering criminal assistance under RCW 9.94A.535(3)(r). This statute authorizes the imposition of an exceptional sentence for an offense that "involved a destructive and foreseeable impact on persons other than the victim." *Id.* RCW 9.94A.535(3) provides an exclusive list of aggravators that the jury may find, including the destructive impact aggravator. The application of this specific aggravator partially depends on whether rendering criminal assistance victimizes the general public and whether particularized harm suffered by identifiable individuals can justify the aggravator as applied to rendering. The lead opinion reasons that because rendering criminal assistance victimizes the general public, which includes everyone, the destructive impact aggravator can never apply to rendering convictions because no one is "'other than'" everyone. Lead opinion at 10 (emphasis omitted) (quoting RCW 9.94A.535(3)(r)). I would find that context requires the word "victim" in the aggravator statute to mean something different from the general

definition in the Sentencing Reform Act of 1981 (SRA), as codified in RCW 9.94A.030.

For RCW 9.94A.535(3) to apply, the defendant's actions must impact persons other than the victim in a manner distinct from the normal impact of the crime. *State v. Chanthabouly*, 164 Wn. App. 104, 143-44, 262 P.3d 144 (2011). Here, a rational trier of fact could find sufficient evidence to impose the sentencing aggravator based on a destructive and foreseeable impact on the officers' families.

We recently construed the term "victim" for purposes of the SRA in *State v. Sweat*, 180 Wn.2d 156, 322 P.3d 1213 (2014). RCW 9.94A.030(53) defines a "victim" as "any person who has sustained emotional, psychological, physical, or financial injury . . . as a direct result of the crime charged." In *Sweat* we held that context may require using a broader meaning for the word "victim" than the general term provided in RCW 9.94A.030(53). *Id.* at 160. Such is the case here. The lead opinion places too much weight on the fact that rendering criminal assistance arises from actions that are not "intended to cause or actually causing direct injury to any person." Lead opinion at 9 (footnote omitted). This does not make rendering criminal assistance unique. We have recognized that the general public is a victim of every crime. *State v. Haddock*, 141 Wn.2d 103, 111, 3 P.3d 733 (2000); lead opinion at 9. Because a broad definition of "victim" under this aggravator would include everyone, the legislature could not have intended for that broad definition of "victim" to control. Otherwise, the aggravator would never apply.

We should not read a statute in a way that renders any portion meaningless or superfluous. *State v. K.L.B.*, 180 Wn.2d 735, 742, 328 P.3d 886 (2014). Instead, we should read the phrase "persons other than the victim" as meaning those who suffer particularized harm from crimes that victimize the general public. RCW 9.94A.535(3)(r). The Court of Appeals held that while rendering criminal assistance does victimize the general public, the aggravator still applies where "the evidence demonstrates a destructive and foreseeable impact on a *specific* individual or entity." *Davis*, 176 Wn. App. at 876. The court rejected the proposition that rendering victimizes *only* the general public based on the definitions of "victim" in the SRA and "person" in the dictionary. The court determined that the word "person" indicates a linguistic distinction between individuals and the mass of society. *Id.* at 875-76. Under the definitions of both "victim" and "person," application of the aggravator is appropriate when there is a distinct destructive impact on persons other than society as a whole. At trial, the State offered evidence that the families of the involved police officers suffered intense fear that Clemmons would target them next. Because the jury could identify the individual family members and the destructive impact they felt, the aggravator applies.

The court's conclusion in *Haddock*—that unlawful possession of a firearm victimizes the general public—does not conflict with the Court of Appeals opinion in this case. 141 Wn.2d at 110-11.[4] The same principle guided the *Haddock* court

---

[4] *Haddock* considered whether unlawful possession of a firearm and possession of a stolen firearm constitute the same criminal conduct for purposes of calculating an

and the Court of Appeals here. While all crimes victimize the general public, certain crimes "directly inflict[] specific injury on individuals, of the sort described in the [SRA]." *Id.* at 111-12. Rendering criminal assistance inflicts harm on both the general public and law enforcement, whose efforts to detain and prosecute offenders are delayed.

Because the jury found that the officers' families suffered additional harm beyond what the general public suffered, the aggravator is legally and factually applicable to Davis's and Nelson's convictions for rendering criminal assistance, and the sentencing court properly considered it. I would affirm the sentences for rendering criminal assistance.

## CONCLUSION

Davis's and Nelson's convictions based on possession of a firearm cannot stand, as the evidence does not sustain a finding of actual or constructive possession. I would reverse that portion of the Court of Appeals decision upholding those convictions. I would affirm the portion of the Court of Appeals decision correctly applying the destructive impact aggravator. Where identifiable individuals suffer foreseeable harm beyond what the general public suffers as a result of rendering criminal assistance, the aggravator should apply.

For these reasons, I respectfully dissent.

---

offender score. *See* RCW 9.94A.589(1)(a); *State v. Garza-Villarreal*, 123 Wn.2d 42, 47, 864 P.2d 1378 (1993) (the victim of unlawful possession of a controlled substance is the general public).

Stephens, J.