# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48373-4-II |
| Respondent, | |
| v. | |
| MARVIN LAWRENCE MEADOWS, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. – Following a bench trial, the trial court found Marvin Lawrence Meadows guilty of two counts of first degree unlawful possession of a firearm. He appeals, contending sufficient evidence does not exist to support his convictions because the State failed to show possession. In his statement of additional grounds for review (SAG), Meadows alleges the trial court failed to rule on a motion to suppress and defense counsel rendered ineffective assistance of counsel. We affirm Meadows's convictions.

## FACTS

The following facts derive primarily from the trial court's findings of fact and conclusions of law. The findings of fact are unchallenged, except for findings of fact V and VIII. Therefore, the unchallenged findings of fact are verities on appeal. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

Meadows was previously convicted of a serious offense. Meadows and his wife, Charnell Meadows, rented a two-story home with their friend, Michael Reid, in Lakewood, Washington.

Reid was the target of a Lakewood Police Department investigation. Officers obtained a search warrant for the Lakewood home.

When Lakewood Police officers arrived at the home, the Meadowses were leaving the residence. Officers approached the couple and obtained keys to the residence from Meadows.

Inside the home, officers found in the Meadowses' unlocked bedroom a .22 caliber revolver in a safe in the closet, a .357 Magnum revolver on a shelf on the right side of the closet, a 12-gauge shotgun inside the closet on the right side, and a SKS rifle leaning against a wall to the left of the closet. Meadows's clothes were in the closet. A utility bill in Meadows's name for the Lakewood residence was found on the floor.

Meadows's wife, Charnell,[1] told Officer Sean Conlon that the shotgun belonged to her. When asked about the other guns found in the bedroom, she told the officer she did not know about them.

The State charged Meadows with four counts of first degree unlawful possession of a firearm. During the bench trial, Officer Conlon testified that he did not recall the door to the upstairs bedroom being locked. This was corroborated by the fact there was no damage to the door lock, which would have been caused if officers had to force their way in. Officer Noah Dier testified the .357 Magnum revolver and 12-gauge shotgun were "[v]ery easily accessible" in the upstairs bedroom. Report of Proceedings (RP) (Nov. 16, 2015) at 67. Officer Dier testified he did not recall a door on the closet and the closet was an open area.

---

[1] Since Charnell and the appellant share the same last name, Charnell's first name is used for clarity. No disrespect is intended.

Meadows testified that he was unaware of any firearms in the home. At the time of the search, he claimed he was not sharing with his wife the upstairs bedroom where the guns were found. He claimed that he was sleeping in the downstairs room with the computer at the time. Meadows acknowledged that all of his belongings were in the upstairs bedroom.

Charnell also testified for the defense.[2] Charnell claimed that Meadows had no knowledge of the firearms inside the upstairs bedroom. She further claimed that she purchased the .357 Magnum revolver in September 2012 for $250 and obtained a receipt. She also claimed that she purchased the 12-gauge shotgun in October 2012 for $300 and obtained a receipt. Charnell testified officers destroyed the receipts by throwing papers into a bathtub of water when executing the search warrant. Officer Conlon testified that officers did not put papers in the bathtub and turn on the water.

Charnell also testified that the firearms were continuously stored in a locked room downstairs and that Meadows did not know that she stored guns in this downstairs room. Charnell claimed that she alone had the key to this downstairs room and that Meadows never accessed this room. Charnell also claimed that she surreptitiously moved the firearms to the shared bedroom upstairs where they were found because Meadows was temporarily sleeping in the downstairs room. Meadows was sleeping in the downstairs room because they were having marital issues. Charnell testified that she locked the shared upstairs bedroom door where the firearms were kept and that she alone had the key to the upstairs bedroom. She claimed that she placed Meadows's clothing outside of the shared bedroom daily and would not let him have any other access to his clothing, to keep him from leaving her.

---

[2] The trial court summarized Charnell's testimony in finding of fact VII, which is unchallenged.

3

Following testimony, the trial court found in finding of fact V that:

> During the service of the search warrant, a total of four (4) apparent firearms were found in a bedroom shared by Charnell and Marvin Meadows. Documents in the name of Marvin Meadows were found in the bedroom along with the firearms.
> . . . .
> [The firearms found during the search included] a Ruger .357 caliber handgun on a shelf in the closet of the shared bedroom. The closet was 5-10 feet away from the bed. This firearm was almost entirely visible and easily accessible to anyone in the bedroom. This firearm was test fired successfully and found to be operable.
> Finally, officers found a Remington .870 shotgun on the floor of the closet. The shotgun was loaded and had a shell chambered. The shotgun was partially covered by clothing and therefore partially visible to anyone utilizing the bedroom. The shotgun was easily accessible to anyone inside the bedroom. The shotgun was test fired successfully and found to be operable.

Clerk's Papers (CP) at 10-11 (Finding of Fact V). The trial court also found in finding of fact VIII that:

> The Court does not find the testimony of Charnell Meadows to be credible. The $600 paid for 3 of the firearms would have been expensive purchases for a marital community and it is not reasonable to believe that she did not discuss nor share the purchase of the firearms with her husband. In addition, Ms. Meadows made multiple statements to Detective Sean Conlon regarding her knowledge of the firearms that were inconsistent with her in-court testimony.
> The testimony regarding the police placing paperwork and other items in the tub when it contained several inches of water is not credible. The photographs that were taken by Ms. Meadows do not show water in the bathtub. Also, there was no evidence of any damage to locks on the upstairs shared bedroom door which is inconsistent with her testimony that the door was kept locked and would have been forcibly opened by police.
> Ms. Meadows misnamed the shotgun, calling it a 'Mossberg' when in reality it is a Remington. It is not reasonable to believe that a purchaser of a $300 shotgun would not know the manufacturer.
> It is not reasonable to believe that Ms. Meadows kept the shared bedroom door locked and that she placed clothing outside of the bedroom every day for her husband.
> Ms. Meadows made no mention of a 'computer room' downstairs, however, the Defendant called it a 'computer room' and a photograph offered into evidence by the Defendant shows a computer in this room shortly after the search. It is unreasonable to believe that for 18 months before the service of the search warrant

the downstairs room was continuously locked with no access by the Defendant to the room and its computer.

CP at 12-13 (Finding of Fact VIII). Ultimately, the trial court concluded that Meadows "knew about each gun inside the shared bedroom" and that he had "dominion and control over the firearms." CP at 14 (Conclusion of Law IV).

The trial court found Meadows guilty of unlawful possession of the .357 Magnum revolver and the 12-gauge shotgun. The trial court found Meadows not guilty of unlawful possession of the SKS rifle and the .22 caliber revolver because the State failed to prove these firearms were operable to meet the statutory definition of a firearm under RCW 9.41.010(9). Meadows appeals.

ANALYSIS

A.    SUFFICIENCY OF EVIDENCE

Meadows argues that there was insufficient evidence to convict him of first degree unlawful possession of a firearm. We disagree.

Meadows contends substantial evidence does not support the trial court's findings of fact V and VIII. Specifically Meadows contends the trial court erred in finding the firearms were found in a room he shared with his wife and in finding it was unreasonable that his wife would purchase the firearms and not tell Meadows. Lastly, Meadows contends the findings do not support the trial court's conclusion that he knew about the firearms found during the search.

When reviewing the sufficiency of the evidence following a bench trial, "[our] review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *Homan*, 181 Wn.2d at 105-06. Evidence is substantial if it is sufficient to persuade a fair-minded person of the truth of the asserted premise.

*Id.* at 106. Unchallenged findings of facts, along with findings of fact supported by substantial evidence, are verities on appeal. *Id.* We review conclusions of law de novo. *Id.*

First degree unlawful possession of a firearm requires proof that a defendant "owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted . . . of any serious offense as defined in this chapter." Former RCW 9.41.040(1)(a) (2011). Possession can be actual or constructive. Because there is no evidence Meadows owned the guns and Meadows was not directly observed with a firearm, we examine whether he constructively possessed the .357 Magnum revolver and the 12-gauge shotgun to support his two convictions.

To determine constructive possession we analyze whether, under the totality of the circumstances, the defendant exercised "dominion and control" over the item in question. *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014). Dominion and control need not be exclusive and can be established by circumstantial evidence. *State v. Chavez*, 138 Wn. App. 29, 34, 156 P.3d 246 (2007). Factors supporting dominion and control include ownership of the item and ownership of the property or the place where the property is located. *State v. Cantabrana,* 83 Wn. App. 204, 208, 921 P.2d 572 (1996). "[D]ominion and control over [the] premises raises a rebuttable inference of dominion and control over the [contraband]." *Id.*

Here, Meadows provided officers the keys to enter his home. In his unlocked upstairs bedroom, officers found a .357 Magnum revolver and 12-gauge shotgun in the closet. These firearms were visible and accessible. Also in the bedroom were Meadows's clothes and a utility bill in his name.

While Meadows and Charnell claim that Meadows was staying in another room at the time of the search and he had no knowledge of the firearms, credibility determinations are for the trier of fact and are not subject to review on appeal. *State v. Prestegard*, 108 Wn. App. 14, 23, 28 P.3d 817 (2001). Charnell originally told Officer Conlon that she did not know about any of the guns except the shotgun. She then claimed she not only knew about the guns, but purchased each gun herself without telling her husband. She then claimed she received receipts when she purchased the guns, but police destroyed the receipts during the search. However, there was no evidence other than Charnell's testimony to support her claim that the guns belonged to her or that officers destroyed the receipts in a bathtub of water.

Also, both parties claimed Meadows was not staying in the couple's upstairs bedroom, but Meadows's clothing was in the upstairs bedroom along with a utility bill in his name. Meadows's belongings were not in the downstairs bedroom. And the upstairs bedroom was unlocked when police arrived, contrary to Charnell's assertion that she always kept the room locked. Thus, a trier of fact weighing conflicting testimony and the credibility of witnesses could have reasonably inferred from the totality of this evidence that Meadows had dominion and control over the firearms. Thus, he constructively possessed the firearms to support the possession element of his first degree unlawful possession of a firearm convictions.

Based on our record, substantial evidence supports the trial court's findings. And the findings support the trial court's conclusion that Meadows knew about the firearms, had dominion and control over the firearms, and thus constructively possessed the firearms. Accordingly, sufficient evidence exists to support Meadows' two first degree unlawful possession of a firearm convictions.

No. 48373-4-II

B.     SAG ISSUES

1.     Motion to Suppress

In his SAG, Meadows first contends the trial court erred by not ruling on the State's motion to suppress hearsay. Meadows does not direct this court to where in the record this motion was made. While reference to the record is not required in a SAG, the defendant must at least "inform the court of the nature and occurrence of [the] alleged error[]." RAP 10.10. Assuming Meadows is referring to a supplemental motion in limine filed by the State prior to trial to exclude hearsay statements from "Michael Reid or . . . Charnell Meadows," the trial court noted that "[h]earsay is inadmissible" and that it would "cross the bridge . . . if we get there." RP (Nov. 16, 2015) at 19-20.

Reid did not testify and the State only objected once based on hearsay during Charnell's testimony. The objection was in response to a question by defense counsel relating to what Charnell was told about a prior identity theft. Counsel withdrew the question. Based on our record, there was no reason for the trial court to rule on hearsay. Accordingly, Meadows fails to show any trial court error.

2     Ineffective Assistance of Counsel

Next, Meadows argues his trial counsel rendered deficient representation by not submitting a written motion to suppress when Meadows repeatedly asked him to file such motion, not reviewing video evidence given to counsel by Meadows in a timely manner, and not notifying Meadows that there was a formatting issue with the video. Our record does not support these allegations. If Meadows has additional evidence to support these allegations, the appropriate

8

No. 48373-4-II

avenue for relief is a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

C.      APPELLATE COSTS

Meadows objects to the imposition of appellate costs asserting that he does not have the ability to pay. We defer the matter of appellate costs until the State files a cost bill. Under *State v. Grant*, a defendant is not required to address appellate costs in his or her briefing to preserve the ability to object to the imposition of appellate costs. 196 Wn. App.644, 650-51, 385 P.3d. 184 (2016). A commissioner of this court can consider whether to award appellate costs in due course under the newly revised RAP 14.2 if the State files a cost bill and if Meadows objects to that cost bill.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, A.C.J.

Melnick, J.

9