# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58355-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| TOVIA PUAAULI, | |
| Appellant. | |

MAXA, J. – Tovia Puaauli appeals his convictions of first degree unlawful possession of a firearm and second degree rendering criminal assistance - conceal, alter or destroy physical evidence. The convictions were based on a surveillance video showing a man holding a firearm while assaulting a woman in a motel parking lot and then handing the firearm to Puaauli. The video showed Puaauli walking away with the firearm for 14 seconds before he no longer appeared on the video, and then he reappeared without the firearm 30 seconds later. The police later found the firearm hidden under a mattress in a motel room.

We conclude that the State presented sufficient evidence to convict Puaauli of first degree unlawful possession of a firearm but not to convict him of second degree rendering criminal assistance - conceal, alter or destroy physical evidence. Accordingly, we affirm Puaauli's conviction of first degree unlawful possession of a firearm but we reverse his conviction of second degree rendering criminal assistance - conceal, alter, or destroy physical evidence. We remand for the trial court to dismiss the second degree rendering criminal assistance - conceal, alter, or destroy physical evidence charge with prejudice.

FACTS

*Background*

In April 2021, someone reported to the Fife Police Department that a shot had been fired at motel in Fife. The reporting party described three people standing in the motel parking lot, two of which later were identified as Puaauli and Vernon Borja. As a police officer pulled in to the motel parking lot, Puaauli and two other people walked toward the motel rooms while Borja hid behind some cars and then ran in another direction. The officers quickly detained Borja.

The officers obtained and reviewed the motel's surveillance video. They determined that Puaauli had entered room 113 of the motel. The officers then obtained a search warrant for room 113. They found a firearm under the mattress of a bed in room 113.

The State charged Puaauli with first degree unlawful possession of a firearm and second degree rendering criminal assistance - conceal, alter or destroy physical evidence.

*Surveillance Video*

The motel's surveillance video showed Borja approaching a woman, who was sitting inside a parked car, while holding what appeared to be a firearm. Borja appeared to assault the woman. Puaauli was standing near the car throughout the altercation. Borja then walked over to Puaauli and handed him the firearm. Puaauli walked toward a motel room, holding the firearm against his leg with his arm extended. The video showed Puaauli holding the firearm for about 14 seconds before he no longer appeared on the video. He then was out of the video for about 30 seconds. When he reappeared on the video, he no longer was holding the firearm.

*Testimony*

Ryan Pomeroy, a patrol officer for the Fife Police Department, testified that the surveillance video showed Borja walking over to Puaauli and handing a firearm to Puaauli.

Several people then walked toward the motel. Police identified the room that Puaauli and others entered as being room 113.

Pomeroy stated that it took approximately two hours to obtain the search warrant. During that time the officers made sure that nobody went in or came out of the room. The officers then cleared the room, but upon entering there was a man on the bed. Officers located a firearm under the bed where the man was lying.

Tobin Volkman, a detective for the Fife Police Department, testified that while watching the surveillance video, he observed Borja approach Puaauli in the parking lot and hand Puaauli what appeared to be a firearm. Volkman stated that the police did not know who owned the firearm and there was no record showing whether anyone who was in room 113 owned the firearm. The police report did not indicate to whom room 113 was registered. Volkman stated that during the execution of the search warrant, the firearm was located between the mattress and the box spring of the bed where the man was lying.

*Verdict*

Puaauli stipulated that he previously had been convicted of a serious crime. The jury found Puaauli guilty of first degree unlawful possession of a firearm and second degree rendering criminal assistance - conceal, alter, or destroy physical evidence.

Puaauli appeals his convictions.

ANALYSIS

A.    STANDARD OF REVIEW

The test for determining the sufficiency of evidence is whether any rational trier of fact could find the elements of the charged crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the State. *State v. Gouley*, 19 Wn. App. 2d 185, 194, 494

P.3d 458 (2021). We resolve all reasonable inferences in favor of the State and interpret inferences most strongly against the defendant. *Id.* Circumstantial and direct evidence are equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017).

B.    UNLAWFUL POSSESSION OF FIREARM

Puaauli argues that the State did not present sufficient evidence to convict him of first degree unlawful possession of a firearm. We disagree.

1.    Legal Principles

Under RCW 9.41.040(1)(a), a person commits first degree unlawful possession of a firearm "if the person owns, accesses, has in the person's custody, control, or possession, or receives any firearm after having previously been convicted . . . of any serious offense." As noted above, Puaauli previously had been convicted of a serious offense.

Possession of an item can be either actual or constructive. *State v. Ibarra-Erives*, 23 Wn. App. 2d 596, 602, 516 P.3d 1246 (2022), *review denied*, 200 Wn.2d 1028 (2023). Actual possession is when a person has "physical custody of a given item." *Id.* Constructive possession is when a person has " 'dominion and control' " over a given item. *Ibarra-Erives*, 23 Wn. App. 2d at 602. (quoting *State v. Reichert*, 158 Wn. App. 374, 390, 242 P.3d 44 (2010)). The defendant does not need to have exclusive control to establish possession. *Ibarra-Erives*, 23 Wn. App. 2d at 602.

Actual possession "does not include 'passing control which is only a momentary handling.' " *State v. Davis*, 182 Wn.2d 222, 237, 340 P.3d 820 (2014) (Stephens, J., dissenting) (quoting *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969)).[1] However, "[t]he duration

---

[1] Four other justices joined Justice Stephens's dissent on the issue of possession, making the dissent the opinion of the court on that issue.

of the handling . . . is only one factor to be considered in determining whether control, and therefore possession, has been established." *State v. Staley*, 123 Wn.2d 794, 801, 872 P.2d 502 (1994). When analyzing momentary handling, "the quality of the control matters more than the duration of the control." *Davis*, 182 Wn.2d at 237 (Stephens, J., dissenting). Therefore, "[d]epending on the total situation, a 'momentary handling', along with other sufficient indicia of control over the [item], may actually support a finding of possession." *Staley*, 123 Wn.2d at 802.

> 2.   Actual Possession

The evidence shows that Puaauli actually handled the firearm, and that control was between 14 and 44 seconds. Because the duration of the control was relatively brief, we must focus on the quality of the control. *Davis*, 182 Wn.2d at 237 (Stephens, J., dissenting). We must determine whether there was "other sufficient indicia of control" over the firearm that supports a finding of actual possession. *Staley*, 123 Wn.2d at 802.

Here, Puaauli did not immediately get rid of the firearm once it was handed to him. Instead, the video shows that Puaauli was carrying the firearm toward room 113, and a reasonable inference is that he took the firearm into that room. In other words, he did something with the firearm other than merely momentarily handling it. Taking the firearm from the parking lot to room 113 constituted "other sufficient indicia of control" over the firearm that supports a finding of actual possession. *Staley*, 123 Wn.2d at 802.

We conclude that the State presented sufficient evidence to show that Puaauli had actual possession of the firearm. Therefore, we hold that the evidence was sufficient to convict Puaauli of unlawful possession of a firearm.

C.     RENDERING CRIMINAL ASSISTANCE

Puaauli argues that the State did not present sufficient evidence to convict him of second degree rendering criminal assistance - conceal, alter, or destroy physical evidence.  We agree.

RCW 9A.76.050 states,

[A] person "renders criminal assistance" if, with intent to prevent, hinder, or delay the apprehension or prosecution of another person who he or she knows has committed a crime or juvenile offense or is being sought by law enforcement officials for the commission of a crime or juvenile offense or has escaped from a detention facility, he or she:
 . . .
(5) Conceals, alters, or destroys any physical evidence that might aid in the discovery or apprehension of such person.

Here, the surveillance video showed Puaauli in the same vicinity of Borja while Borja was assaulting the woman.  So there was a reasonable inference that Puaauli knew Borja had committed a crime.  The question is whether there was sufficient evidence to show that Puaauli (1) intended to prevent, hinder, or delay the apprehension or prosecution of Borja, and (2) concealed evidence that might aid in the discovery or apprehension of Borja.

The State argues that Puaauli violated RCW 9A.76.050(5) because it can be inferred that he hid the firearm under the mattress.  We disagree that this is a reasonable inference.  There was no evidence regarding what Puaauli did with the firearm once he was off the video, even if he went into room 113.  There were others in the room, and they could have hidden the gun during the two hours it took to obtain the search warrant.  Suggesting that Puaauli rather than someone else hid the gun under the mattress is speculative.

The State also argues that Puaauli "concealed" the firearm when he walked toward the motel room in order to prevent anyone from linking the firearm to Borja.  We disagree that Puaauli was attempting to hide the firearm by holding it against his leg.  That would be a normal way to hold a gun for a brief period, and generally people do not walk around pointing a firearm

unless they are planning on using the firearm or are actively using the firearm. And there was no evidence that Puaauli was intending to hinder Borja's apprehension at that time. Further, the police had not yet arrived and there was no indication that Puaauli knew that the police had been called or were on their way.

We conclude that the State did not present sufficient evidence to show that Puaauli intended to prevent, hinder, or delay Borja's apprehension or prosecution or that he concealed evidence that might aid in the discovery or apprehension of Borja. Therefore, we hold that the evidence was insufficient to convict Puaauli of second degree rendering criminal assistance - conceal, alter, or destroy physical evidence.

## CONCLUSION

We affirm Puaauli's conviction of first degree unlawful possession of a firearm, but we reverse his conviction of second degree rendering criminal assistance - conceal, alter, or destroy physical evidence. We remand for the trial court to dismiss the second degree rendering criminal assistance - conceal, alter, or destroy physical evidence charge with prejudice.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
CRUSER, C.J.

_____
LEE, J.

7