IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | No. 85975-7-I |
| Respondent, | DIVISION ONE |
| v. | |
| DAVID COSME RICO, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, J. — In March 2022, David Rico appeared via videoconference for an arraignment on charges of misdemeanor domestic violence assault and vehicle prowl. The court imposed a no-contact order between Rico and Michelle Thayer, his girlfriend and the victim. As Rico and Thayer lived together, the court granted Rico's request for several hours to move out of the home. About a month later, responding to a 911 hang-up call, law enforcement found Rico at Thayer's apartment, in violation of the no-contact order.

Following trial, a jury convicted Rico of domestic violence felony violation of a no-contact order. The trial court imposed a mental-health sentencing alternative. Rico appeals. Finding sufficient evidence existed to support Rico's conviction, we affirm.

FACTS

In March 2021, David Rico appeared via online videoconferencing for arraignment on charges of misdemeanor domestic violence and vehicle prowl.

The court issued a pre-trial no-contact order prohibiting Rico from contacting Michelle Thayer, the victim and Rico's girlfriend. At the time of the hearing, Rico and Thayer were living together and appeared together on the video call. The court directed Rico not to have contact with Thayer, but granted Rico several hours to move out of the house. When the judge told Rico he was not to have contact with Thayer, Rico said, "Ha, ha, fucking stupid. . . . This is just – this is (indiscernible)."

The court also ordered Rico to update his address and go to the courthouse the following day to sign the no-contact order. The order was never signed, and no evidence exists that Rico ever went to the courthouse. According to the record, a copy of the order was mailed to Rico at the address on file.

About a month later, in April 2021, SeaTac Police Officer Travis Brunner responded to a 911 hang-up call from a telephone number associated with Thayer's SeaTac apartment. When Brunner walked into the complex, he saw a man—later identified as Rico—exit Thayer's apartment and go toward the main entrance. Brunner told Rico he would like to speak with him, and Rico turned around and headed back to the apartment saying he forgot something. Believing there may be a potential no-contact order violation, Brunner requested backup.

When additional officers arrived, they knocked on Thayer's door. Thayer initially denied the officers entry, but eventually allowed them into the apartment. The officers announced their presence, as well as the presence of a K9 unit, which took about 10 to 15 minutes, and then they began searching the apartment. It was only after officers started searching the apartment that Rico

came out of a back bedroom and surrendered. At some point before the police entered the apartment, Rico called Thayer and told her "to send the dogs away." Rico was arrested and charged with felony violation of a no contact order. At trial, the jury found Rico guilty. Rico appeals.

Analysis

Rico contends substantial evidence did not exist to establish beyond a reasonable doubt that he knew his conduct was a violation of the no contact order. The State asserts the evidence at trial was sufficient for a rational juror to conclude Rico knowingly violated the no contact order. Because substantial evidence exists, we agree with the State.

This court reviews sufficiency of the evidence claims de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). To determine whether sufficient evidence exists to support a conviction, "we consider 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime *beyond* a reasonable doubt.' " *Rich*, 1184 Wn.2d at 903 (emphasis in original) (internal quotation marks omitted) (quoting *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980) (plurality opinion)).

Circumstantial and direct evidence are considered equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). But "inferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013). A sufficiency of the evidence review " 'is highly deferential to the jury's decision,

and we do not consider questions of credibility, persuasiveness, and conflicting testimony.' " *In re Pers. Restraint of Arntsen*, 2 Wn.3d 716, 724, 543 P.3d 821 (2024) (internal quotation marks omitted) (quoting *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014) (plurality opinion)).

A person commits the crime of felony violation of a court order when the individual (1) knows of the existence of a no-contact order; (2) knowingly violates a provision of the order; and (3) has twice been previously convicted for violating the provisions of a court order. Former RCW 26.50.100 (1996).[1] Concerning the "knowledge" element:

> A person knows or acts knowingly or with knowledge when:
>
> (i) [They are] aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
>
> (ii) [They have] information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b). It is not a requirement the individual has knowledge of the specific terms of the no-contact order, the defendant only needs to know the no-contact order exists and that their willful conduct violated the no-contact order. *State v. Sanchez*, 30 Wn. App. 2d 402, 407-08, 544 P.3d 1107 (2024). A defendant's knowledge is a question for the trier of fact. *Sanchez*, 30 Wn.App.2d at 407.

---

[1] In July of 2022, after the initiation of this case, chapter 26.50 RCW was repealed by Laws of 2021, ch. 215, § 170, and replaced with chapter 7.105 RCW.

Mr. Rico's trial was bifurcated. The jury later found Rico had twice been previously convicted of violating a no contact order, satisfying the third element.

Here, while the court did not explicitly state the terms of the no-contact order when it was issued, substantial evidence exists to support a finding that Rico had knowledge his behavior violated the order. At the hearing, Rico verbally responded when the judge issued the order and told Rico he had to leave the apartment he shared with Thayer, indicating Rico knew the order was issued and, based on his language, was not happy with the decision.

Furthermore, when police arrived at Thayer's apartment, Rico hid in the back bedroom and did not immediately respond to police when they began searching the apartment for him. Rico contends he responded this way because he did not want to talk to the police because of his history with law enforcement, but he also testified he was not aware of any pending legal actions against him, including a no-contact order. While it may be reasonable to think Rico simply did not want to interact with police, the evidence must be viewed in the light most favorable to the State. And viewing this evidence in the light most favorable to the State, a rational juror could conclude Rico knew he was not allowed to have contact with Thayer, which is why he did not want to interact with the police either in the hallway or in the apartment.

Rico also contends that, without being aware of the specific terms of the no-contact order, he had no way of knowing what behavior was prohibited because "contact" has multiple meanings. Rico states it would be reasonable for him to interpret "no contact" as prohibiting him from having physical contact with Thayer or not being in the same room with her. But even when the terms of a no-contact order are not explicitly stated, it is reasonable to understand "no

contact" as meaning *all* contact is prohibited. *See State v. Taylor*, No. 50448-1-II, (Wash. Ct. App. Oct. 30, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2050448-1-II%20Unpublished%20Opinion.pdf.[2]

The circumstances here are similar to *Taylor.* In *Taylor*, the court issued a no-contact order in open court prohibiting Curtis Taylor from having contact with Chartrice Tillman. Slip op. at 2. The court did not read the specific terms of the order out loud. *Id.* Taylor did not sign the order and no evidence showed he received it in the mail. *Id.* About six weeks after the order was issued, police responded to a domestic disturbance call at an apartment. *Id.* Taylor yelled through the door that nothing was going on and he was the only person in the apartment. *Id.* After about five minutes of back and forth between the officers and Taylor, Tillman answered the door. *Id.* Police found Taylor hiding in the kitchen. *Id.* Taylor was arrested and charged with violation of a domestic violence court order. *Id.* at 1. At trial, the jury found Taylor guilty, and this court affirmed. *Id.* at 4, 11.

Rico points out the facts of this case are not identical, as Taylor lied to the police about being the only person in the apartment and Tilman testified Taylor was reluctant to enter the apartment. But, while the facts are not identical, the same conclusion can be reached here: the direct and circumstantial evidence "is sufficient evidence from which a jury could reasonably conclude that [Rico] was aware of a fact, circumstance, or result or has information that would lead a

---

[2] The State offers this case as persuasive authority under GR 14.1. While the opinion is unpublished, it was adopted in full in the published opinion in *Sanchez*, 30 Wn. App. 2d 402.

reasonable person in the same situation to believe that fact exists such that [Rico] knew all contact with [Thayer] was prohibited." *Id.* at 7.

By viewing the evidence in the light most favorable to the State, we conclude sufficient evidence existed to support a finding that Rico knew of the no-contact order and that his intentional actions violated the order.

We affirm.

_____

WE CONCUR:

_____          _____