IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37024-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL RODNEY HIATT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Michael Hiatt appeals his conviction of possession of a stolen motor vehicle. Evidence that he gave permission to a friend to chain a vehicle recognizable as stolen to the front bumper of Mr. Hiatt's own inoperable car was insufficient, without more, to establish Mr. Hiatt's constructive possession of the stolen vehicle. We reverse the conviction, dismiss the charge, and remand for resentencing.

FACTS AND PROCEDURAL BACKGROUND

Beginning on December 10, 2018, KC Chavez possessed and was using a Honda Accord owned by his brother. Mr. Chavez parked and left the Accord outside his home two weeks later, on Christmas Eve. The next morning, it was gone. A Spokane patrol officer responded to Mr. Chavez's report of a stolen vehicle. Mr. Chavez took the officer to the location where Mr. Chavez said he had parked the Accord and the officer observed broken glass on the ground. Mr. Chavez said he and his brother were the only two people with keys to the car, and that he (Mr. Chavez) had not given anyone permission to use it at the time it went missing.

On Christmas night, another officer, Ethan Wilke, was on patrol when he observed a Ford Expedition that met the description of an Expedition that had been reported as stolen.[1] He ran the Expedition's California license plate and learned that the plate, at least, was not associated with a stolen car. There was too much condensation on the Expedition's windows for him to read the vehicle identification number (VIN).

As Officer Wilke began to leave, he saw that a black Honda Accord, which was parked nose to nose with the Expedition, was actually chained and padlocked to the

---

[1] The trial court's finding of fact 1, which states in part that Officer Wilke "observed a Ford Expedition which had been reported as stolen," Clerk's Papers at 83, is the only finding designated as a finding by the trial court that Mr. Hiatt challenges. There is an error; the Expedition observed by Officer Wilke turned out not to be the Expedition reported as stolen.

Expedition, through the cars' front bumpers. He also saw that the Accord had a broken driver's side window. He stopped to investigate and saw glass on the driver's seat of the Accord. It had a punch-out key stuck in its ignition that Officer Wilke was unable to remove. The Accord did not have a license plate, so Officer Wilke checked the Honda's VIN and learned that the car was Mr. Chavez's stolen Accord.

Officer Wilke and Officer Brian Blankenstein, who had joined him at the scene, wanted to see if there was anyone in the Expedition, so they approached it, knocked on the door, and announced themselves. Michael Hiatt, who had been sleeping inside, stepped out. Asked for his name and date of birth, he provided them. Officer Wilke ran Mr. Hiatt's name and learned he had misdemeanor warrants. He placed Mr. Hiatt under arrest and read him his *Miranda*[2] rights. Mr. Hiatt agreed to speak with the officers.

Mr. Hiatt told the officers the Expedition belonged to him, although it was not registered to him. He told them the Accord belonged to a friend, whose name he did not want to disclose. He said he had allowed his friend to chain the cars together. At trial, Officer Wilke provided the following testimony on this point:

> Q. . . . Did you ask him if he had any idea who the Honda belonged to?
> A. I did.
> Q. Did he reply?

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

A. He told me it was a friend of his. He did not wish to tell me their name.

Q. Did you ask Mr. Hiatt why the sedan was chained to the Ford Expedition?

A. I did.

Q. Did he respond?

A. He told me his friend had asked him if he could keep his car attached to his car so that it didn't get stolen.

Q. Did you ask Mr. Hiatt where he was living at the time?

A. I did.

Q. Did he respond?

A. Yeah, he told me he was homeless and living out of the Expedition.

Report of Proceedings (RP) at 30.

Officer Wilke searched Mr. Hiatt incident to arrest and found three key rings with shaved keys in Mr. Hiatt's pants pocket.

When Mr. Chavez arrived to retrieve the Accord, officers cut the chain because no key to the padlock was found in Mr. Hiatt's possession or otherwise. On examining the Accord, Mr. Chavez told officers that several items that had been in it the day before were missing, including a toolbox, speakers and a stereo. He also claimed that the rims and tires now on the Accord were not the rims and tires on the Accord when it was stolen.

Officer Wilke later testified that Mr. Chavez recognized his rims and tires as being on a white sedan located in the vicinity. (Mr. Chavez testified it was actually his brother

who claimed to have seen the rims and tires on a white sedan.)  Officer Wilke ran the white sedan's plates and confirmed it had not been reported stolen.  He did not attempt to contact that vehicle's owner.

None of Mr. Chavez's missing property was found in Mr. Hiatt's possession.  When cross-examined about that at trial, Officer Wilke said he never obtained a warrant to search the Expedition.  None of the missing items was otherwise recovered.

When cross-examined by the defense at trial, Officer Wilke acknowledged that a beer can had been found in the Accord that Mr. Chavez said was not his.  The officer collected it as evidence to be checked for latent fingerprints, but never got the results back.  He did not undertake fingerprint collection from the interior or exterior of the Accord.  He admitted he did not see cuts on Mr. Hiatt's hands, broken glass on his clothing, or anything else that physically tied Mr. Hiatt to the inside of the Accord.

Officer Blankenstein was told by Mr. Hiatt that the Expedition was inoperable.  Mr. Hiatt also told Officer Blankenstein that the chain connecting the cars was not his.  Officer Blankenstein, like Officer Wilke, tried to remove the punch-out key in the Accord's ignition without success.  When he tried the key, the Accord started up.

The State called Mr. Chavez as a trial witness.  He testified that the persons who had permission to drive the Accord were his brother and his friends Boogie, Trevor, and Adam.  In the prosecutor's redirect examination, she asked if he recognized Mr. Hiatt,

and Mr. Chavez testified he knew him as his friend Boogie. He said that he had given him permission to use his car previously, "but not, not that specific day." RP at 77.

Mr. Hiatt was charged with possession of a stolen motor vehicle and making or possessing a motor vehicle theft tool. He waived his right to a jury trial and at his one-day bench trial, the State called as witnesses the three police officers involved in the investigation and Mr. Chavez. At the close of the State's case, Mr. Hiatt made a motion to dismiss the possession of a stolen motor vehicle charge for lack of evidence of actual or constructive possession. The motion was denied. The defense presented no evidence.

The trial court found Mr. Hiatt guilty of both charges. On the element of possession of the Accord that had been raised by the dismissal motion, the trial court concluded:

6.      Mr. Hiatt had constructive possession of the Honda Accord because he had dominion and control over the Honda Accord.

7.      Mr. Hiatt had the ability to saw off the padlock or make the Ford Expedition operable; the Honda Accord would then [have] been in Mr. Hiatt's actual possession.

Clerk's Papers (CP) at 86.

Mr. Hiatt appeals.

## ANALYSIS

Mr. Hiatt contends that insufficient evidence supports his conviction for possession of a stolen motor vehicle.

6

A defendant commits the crime of possessing a stolen motor vehicle when he knowingly receives, retains, possesses, conceals, or disposes of a stolen motor vehicle, knowing it has been stolen, and withholds or appropriates the vehicle to the use of any person other than the true owner or person entitled thereto. RCW 9A.56.068, .140(1). To support a conviction, the State must prove "(1) actual or constructive possession of the stolen property with (2) actual or constructive knowledge that the property is stolen." *State v. Summers*, 45 Wn. App. 761, 763, 728 P.2d 613 (1986).

We view Mr. Hiatt's principal challenge as his assignment of error to the trial court's sixth and seventh conclusions of law: that Mr. Hiatt had constructive possession of the Accord and, by sawing off the padlock or making the Expedition operable, he could have reduced it to actual possession. While labeled as conclusions of law, they are findings of fact, which is how we treat them. *Stastny v. Bd. of Trs. of Cent. Wash. Univ.*, 32 Wn. App. 239, 246, 647 P.2d 496 (1982) (We treat findings or conclusions for what they are, not how they are labeled.); *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986) (A finding of fact erroneously labeled as a conclusion of law is treated as a finding of fact.).

Following a bench trial, we review whether substantial evidence supports the challenged findings of fact, and whether findings that are supported by the evidence support the conclusions of law. *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person

7

of the truth of the asserted premise." *Id*. at 106. While we defer to the trial court's resolution of conflicting evidence, *see id.*, the material facts in this case were not in dispute.

To determine constructive possession a court examines whether, under the totality of the circumstances, the defendant exercised dominion and control over the item in question. *State v. Davis*, 182 Wn.2d 222, 234, 340 P.3d 820 (2014). There must be substantial evidence to show dominion and control. *Id.* at 234-35. Factors supporting dominion and control include ownership. *Id.* at 234. While ownership is not required, the fact that a defendant asserts no interest in the item is relevant. *Id.* at 235. The ability to immediately take actual possession of an item can establish dominion and control; mere proximity to the item cannot. *Id.* Frequent use of the item and the ability to exclude others are characteristics of constructive possession. *State v. Edwards*, 9 Wn. App. 688, 690, 514 P.2d 192 (1973).

Due process requires the State to prove all elements of a crime beyond a reasonable doubt. *State v. Washington*, 135 Wn. App. 42, 48, 143 P.3d 606 (2006). The test for sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

The State's evidence in support of Mr. Hiatt's constructive possession of the Accord is the fact that it was chained to the Expedition with Mr. Hiatt's permission.

There is no evidence Mr. Hiatt promised to protect the Accord, which was parked on a public street. There is no evidence Mr. Hiatt's friend gave him permission to enter the Accord or that Mr. Hiatt entered it. The driver's side window was broken, so it was possible for Mr. Hiatt to enter the Accord, but it was possible for any passerby to do the same thing.

The Accord was operable and a key stuck in the ignition would start it. But it was chained to the Expedition with a chain that did not belong to Mr. Hiatt and a padlock that there is no evidence he could unlock. As the trial court found, Mr. Hiatt could have sawed off the padlock and taken actual possession of the Accord, but there is no evidence he had his friend's permission to do that. And there is no evidence it would have been a feasible thing for him to do, given that he was homeless and likely lacked the means to travel to a hardware store to obtain the necessary tools.

As the trial court also found, Mr. Hiatt could, in theory, have made the Expedition operable. But the fact that Mr. Hiatt was sleeping in the inoperable Expedition, with its own broken-out window, on what Officer Wilke testified was a "really cold" December night, suggests he lacked the resources to repair and fuel it. RP at 20.

Viewing the evidence in the light most favorable to the State and admitting all reasonable inferences, substantial evidence does not support the finding that Mr. Hiatt had constructive or actual possession of the Accord.

The dissent finds sufficient evidence by making its own finding that Mr. Hiatt was

a bailee of the Accord. It states that defense counsel agreed at oral argument that Mr. Hiatt was a bailee, and since a bailee is someone responsible for keeping property safe until it is returned to its owner, defense counsel admitted that Mr. Hiatt was protecting the car and withholding it from Mr. Chavez.

Defense counsel did not agree that Mr. Hiatt was a bailee. What defense counsel said was, "You know, I don't actually know the law surrounding who qualifies as a bailee or not." Wash. Court of Appeals oral argument, *State v. Hiatt*, No. 37024-1-III (Dec. 14, 2020) at 10 min., 47 sec. through 10 min., 52 sec. (on file with court). When posing hypotheticals, *members of the panel* sometimes characterized them as bailments. And defense counsel agreed that if a hotel guest putting jewels in an in-room safe was a bailor and the hotel a bailee, then it "sounds like" Mr. Hiatt could be a bailee. *Id.* at 11 min., 18 sec. through 11 min., 20 sec. Defense counsel stated that the "best analogy" suggested during oral argument was a restaurant placing a bike rack outside its entrance for the convenience of patrons who wished to lock their bikes. *Id.* at 11 min., 43 sec. through 11 min., 52 sec.

In fact, under Washington law, a bailee is not someone responsible for keeping property safe; a bailee is someone who accepts possession of property. "Before a bailment . . . can be said to exist 'there must be a change of possession and an assumption or acceptance to possession by the person claimed to be the bailee.'" *Freeman v. Metro Transmission, Inc.*, 12 Wn. App. 930, 932, 533 P.2d 130 (1975) (quoting *Collins v.*

10

*Boeing Co.*, 4 Wn. App. 705, 711, 483 P.2d 1282 (1971)). "A bailment arises generally when personalty is delivered to another for some particular purpose with an express or implied contract to redeliver when the purpose has been fulfilled." *Id.* And a gratuitous bailee (one who accepts care and custody of property without charge and without any expectation of receiving a benefit or consideration) is not responsible for keeping property safe—a gratuitous bailee can only be liable for a loss proximately caused by the bailee's own gross negligence. *White v. Burke*, 31 Wn.2d 573, 577, 197 P.2d 1008 (1948).

Mr. Hiatt never admitted to accepting possession of the Accord or to being a bailee. The evidence on which the dissent relies in saying that he did is the following testimony from an investigating officer:

> Q. Did you ask Mr. Hiatt why the sedan was chained to the Ford Expedition?
> A. I did.
> Q. Did he respond?
> A. He told me his friend had asked him if he could keep his car attached to his car so that it didn't get stolen.

RP at 30. One can infer from this testimony that *Mr. Hiatt's friend* believed that chaining his bumper to Mr. Hiatt's bumper would deter theft, but nothing can be inferred about Mr. Hiatt other than that he agreed his friend could attach the Accord's bumper to his Ford's bumper with a chain. The trial court did not infer anything more. Its only relevant findings are its 15th and 16th findings, that "Mr. Hiatt indicated his friend asked

11

if the friend could chain his Honda to Mr. Hiatt's Ford," and "Mr. Hiatt allowed his friend to do so." CP at 84. The evidence at trial did not support a finding that Mr. Hiatt was a bailee, let alone a bailee who undertook to protect the Accord.

RCW 9A.56.010(23), which is cited by the dissent, does not apply. It provides that someone who *is* a bailee from the "true owner" can "'wrongfully obtain'" or "'exert unauthorized control'" over entrusted property if the bailee "secrete[s], withhold[s], or appropriate[s] the same to his or her own use or to the use of any person other than the owner." Mr. Hiatt did not accept possession of the Accord from its owner, Mr. Chavez, and then secrete, withhold or appropriate it to his own use.

We disagree with the dissent that when reviewing a sufficiency challenge to the outcome of a bench trial we may look beyond the trial court's findings if they are "faulty," and identify other facts that support guilt. We can no more do that in a bench trial than we could in a jury trial in which findings were made in a special verdict. The dissent cites *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), for this prosecution-friendly approach, but the standard for sufficiency review established in *Jackson* is intended to protect defendants, not convictions.

Nor do we think the trial court's findings in this case *were* faulty. It appears the trial court found what it believed it could find, in what was a weak State case.

12

No. 37024-1-III
*State v. Hiatt*

We reverse and dismiss the charge of possession of a stolen vehicle. We remand

for resentencing.[3]

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

I CONCUR:

_____
Lawrence-Berrey, J.

---

[3] Mr. Hiatt's opening brief raised issues about his offender score. In a motion filed following oral argument, he requests leave to supplementally brief the impact on his criminal history of *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), and to request that we strike a provision of his judgment and sentence requiring the payment of Department of Correction supervision fees. Because all of these issues can be addressed at resentencing, the motion to file the supplemental brief is denied.

No. 37024-1-III

PENNELL, C.J. (dissenting) — KC Chavez's stolen Honda Accord was found affixed to Michael Hiatt's Ford Expedition, yet the majority claims Mr. Hiatt did not possess the Accord. The majority reaches this conclusion not because Mr. Hiatt did not know the two cars were chained together. Indeed, Mr. Hiatt admitted he allowed the Accord to be chained to his Expedition. Instead, the majority claims Mr. Hiatt did not possess the Accord because he could not drive it and had no greater access to it than any other member of the public. I disagree and therefore dissent.

As counsel for Mr. Hiatt agreed at oral argument, the evidence at trial showed Mr. Hiatt was at least a bailee for the stolen Accord. Wash. Court of Appeals oral argument, *State v. Hiatt*, No. 37024-1-III (Dec. 14, 2020), at 10 min., 42 sec. through 11 min., 27 sec. (on file with court). While he may not have specifically admitted that he promised he would guard the car, Mr. Hiatt told police he had allowed the stolen car to be attached to his car so that it did not get stolen. A fair interpretation of this statement is that Mr. Hiatt admitted to being a bailee. It is certainly a fair interpretation given the standard of review, which demands that we assess the facts in the light most favorable to the State.

A "bailee" is someone responsible for keeping property safe until it is returned to its owner. *See* BLACK'S LAW DICTIONARY 173 (11th ed. 2019). "Bailee" is a term that dates back to the 16th century and refers to "[s]omeone who receives personal property from another, and has possession of but not title to the property." *Id.* There are two types of bailees: a gratuitous bailee and a bailee for hire. *White v. Burke*, 31 Wn.2d 573, 578, 197 P.2d 1008 (1948). A gratuitous bailee is one who receives no consideration for a bailment; a bailee for hire receives some sort of compensation. *Id.* The different benefits conferred on a bailee result in different duties to protect the bailed property. A gratuitous bailee need only refrain from gross negligence. *Id.* at 582. A bailee for hire must refrain from ordinary negligence. *Id.* Both a gratuitous bailee and a bailee for hire have a duty to return property to the bailor upon request. *See State v. Kealey*, 80 Wn. App. 162, 172-73, 907 P.2d 319 (1995).

Mr. Hiatt's statement indicates he was a gratuitous bailee. According to his statement, he derived no benefit from allowing the Accord to be chained to his Expedition. Had Mr. Hiatt been able to derive some sort of benefit, such as using the Accord for sleeping or driving, he would have been a bailee for hire. *White*, 31 Wn.2d at 583 (A person is a bailee for hire if they "derive[ ] a benefit to [themselves] by taking possession of the bailor's property . . . ."). Regardless, this distinction does not matter for our purposes. A gratuitous bailee still receives and possesses property. Mr. Hiatt's claim to be a gratuitous bailee of the Accord does not mean that he did not possess the vehicle.

2

Washington specifically recognizes that a person who is a bailee of stolen property meets the criteria for unlawful possession. *See* RCW 9A.56.010(23)(b) ("'[w]rongfully obtains' or 'exerts unauthorized control' means . . . [h]aving any property or services in one's possession, custody or control as bailee"). By retaining a piece of property so that it is withheld from its true owner, a bailee possesses property as required to prove the crime of unlawful possession of stolen property. *See* SETH A. FINE, 13B WASHINGTON PRACTICE: CRIMINAL LAW AND SENTENCING § 31.13 (3d. ed. 2020) (An essential element of possessing stolen property is that "the defendant withheld or appropriated [the property] to the use of someone other than the true owner.").

Mr. Hiatt's admission that he was a bailee of the stolen Accord established that he was withholding the Accord from its true owner by allowing it to be chained to his vehicle. Mr. Hiatt may not have been making use of the Accord. Nor might he have derived any benefit from having the Accord chained to his vehicle. Nevertheless, he still possessed the Accord in that he appropriated it to the use of someone other than the true owner. This was all that was necessary to establish the element of possession.[1]

---

[1] Mr. Hiatt does not challenge the State's ability to prove the other elements of the offense, including the requirement that he know the vehicle was stolen. Here, the circumstantial evidence (including a punched-out ignition, broken window, and recent report of stolen property) provided amply sufficient evidence of knowledge. *See State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967).

It should be noted that the State's evidence would be sufficient to prove possession even if Mr. Hiatt was not believed to be a bailee. Mr. Hiatt need not have been taken at his word that he was holding the Accord for an unnamed friend. The Accord was obviously stolen and Mr. Hiatt was a prime suspect, especially given that he had shaved keys on his person. When caught by police, Mr. Hiatt was likely motivated to try to distance himself from responsibility for the Accord by saying something exonerating. No evidence other than his statement suggested Mr. Hiatt was a bailee. Had Mr. Hiatt said nothing, one could fairly infer from the circumstantial evidence that Mr. Hiatt equally possessed both the Expedition and Accord. Mr. Hiatt's attempt at a self-serving statement did not strip the State of the evidence in its favor or the ability to prove its case. The evidence was more than sufficient to allow the State to prove its case on multiple theories and for a reasonable fact finder to reach a guilty verdict.

The majority does not analyze this alternate view of the evidence, apparently because it goes beyond the trial court's findings. The trial court never made a finding that Mr. Hiatt's statement was not credible. Instead, consistent with the foregoing bailee analysis, the trial court found Mr. Hiatt's statement was not inconsistent with possession.

4

While the trial court did not specifically reject Mr. Hiatt's statement, the fact remains that it *could* have rationally done so, as set forth above.[2] The constitutional sufficiency analysis turns on whether "*any* rational fact finder could have found the elements of the crime beyond a reasonable doubt." *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014) (emphasis added). The test for sufficiency does not differ, regardless of whether there is a bench or jury trial. *Jackson v. Virgina*, 443 U.S. 307, 317 n.8, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

The majority's insistence on staying within the trial court's findings may come from language used by the Supreme Court in *Homan*. Immediately after the foregoing quote regarding the sufficiency standard of review, the *Homan* court recited the sentence: "[F]ollowing a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *Id*. at 105-06. The *Homan* court then went on to disregard this sentence and assess the evidence in the case not according to what the trial judge actually

_____

[2] The fact that the trial court did not address the credibility of Mr. Hiatt's statement does not make its findings deficient. As explained, Mr. Hiatt's statement established he possessed the Accord as a gratuitous bailee. It was therefore unnecessary to decide whether Mr. Hiatt's statement was truthful. Nevertheless, a rational juror *could* have rejected Mr. Hiatt's statement as not credible and, having done so, found him guilty on the basis that he had primary possession of the stolen vehicle.

found, but with respect to what a trier of fact "could find" or "could have found." *Id.* at 107, 109-10.

I do not read *Homan*'s brief reference to the substantial evidence test, which typically applies in civil cases, as binding. *Homan* never limited its review to the actual facts found by the trial court. Instead, the analysis was entirely abstract, focused on what the evidence "could" have proved. The court's early reference to the civil standard for assessing findings appears to be dicta. I agree with our assessment in *State v. Yallup*, 3 Wn. App. 2d 546, 553, 416 P.3d 1250 (2018), that the *Homan* approach does nothing more than apply "the evidentiary sufficiency standard dictated by the Fourteenth Amendment to the United States Constitution" that asks "whether the trier of fact *could* find the element(s) proved."

It bears noting that the requirement a trial judge enter written findings is not based on the constitution, but a court rule. *See* CrR 6.1(d).[3] The purpose of the rule is to *facilitate* appellate review, not change it altogether. *See State v. Head*, 136 Wn.2d 619, 622, 964 P.2d 1187 (1998). In the bench trial setting, there are no jury instructions that can be reviewed to discern whether a verdict was based on legal error. Requiring findings

---

[3] In federal court, findings and conclusions are not required in criminal bench trials unless requested. FRCrP 23(c). The purpose of findings and conclusions is to preserve questions of law for appeal. *Cesario v. United States*, 200 F.2d 232, 233 (1st Cir. 1952).

enables a reviewing court to understand the trial court's interpretation of the law and

ensure an accused has been tried under the proper legal criteria. *See Wilson v. United*

*States*, 250 F.2d 312, 324-25 (9th Cir. 1957). So long as the record shows the trial court

properly understood the law, limited or faulty findings will not result in relief on appeal.

*See State v. Banks*, 149 Wn.2d 38, 65 P.3d 1198 (2003) (conviction affirmed despite trial

court's failure to make a finding on an essential element of the offense).

To the extent I am wrong and *Homan* does alter the sufficiency analysis in

criminal bench trials, it conflicts with binding precedent from the United States Supreme

Court, as set forth by Judge Dwyer's opinion in *State v. Stewart*, 12 Wn. App. 2d 236,

243, 457 P.3d 1213 (2020) (Dwyer, J., concurring) (citing *Jackson v. Virginia*, 443 U.S.

307).[4] I agree with Judge Dwyer that given our court's confusion over *Homan*, the

Supreme Court should clarify the sufficiency standard applicable to criminal bench trials.

If, despite *Jackson*'s statement to the contrary, 443 U.S. at 317 n.8, sufficiency review

differs between bench and jury trials, then there needs to be a clear statement to that

effect. Clarity will help trial judges assess the necessary breadth of their findings. It will

help defendants understand that exercising the right to a jury trial, as opposed to a bench

---

[4] Contrary to the majority's analysis, *Jackson*'s rule does not differ according to which side of the litigation benefits from its impact. The sufficiency standard is the same at bench and jury trials, regardless of whether the impact of the standard benefits the prosecution or defense.

No. 37024-1-III
*State v. Hiatt* (Dissent)

trial, involves the loss of a more generous standard of review on appeal.[5] On the other hand, if there is not a different sufficiency standard (as is my position), then the court needs to articulate the applicable remedy where the State presents sufficient evidence to justify a conviction, but the trial court's findings are faulty. If faulty findings are a trial error,[6] similar to an erroneous jury instruction, then the court should clarify that such errors are amenable to remand and retrial, not reversal with prejudice.

_____, C.J.
Pennell, C.J.

---

[5] The sufficiency analysis carries a strong appellate remedy that favors the defendant. If the State's evidence at a criminal trial is insufficient, then double jeopardy prohibits remand for retrial. *See Burks v. United States*, 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). If, in the bench trial context, the sufficiency analysis were limited to the trial court's findings, then a defendant could prevail on appeal and prevent remand merely by pointing out a faulty finding, regardless of the overwhelming strength of the State's case. In contrast, in the jury trial context, we assess whether any rational jury could have found in favor of the State, regardless of whether the actual jury appears to have accepted a particular set of facts. Even when a trial court issues faulty jury instructions, which would necessarily lead a jury's implicit findings to be faulty, reversal is without prejudice to retrial. *See State v. Brown*, 147 Wn.2d 330, 344, 58 P.3d 889 (2002).

[6] The trial court's findings in this case were not faulty, they were simply limited to the version of the facts presented by Mr. Hiatt. I agree with the trial court that, based on this version of the facts, the conviction should be affirmed. My only point is that the trial court's verdict could have been sustained on a different set of facts.

8