# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58105-1-II |
| Respondent, | |
| v. | |
| JOSHUA TYLER YOUNG, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Joshua Young and two others stole merchandise from a department store. Young drove the escape car, and he attempted to evade police in an extended pursuit. Witnesses heard two gunshots coming from Young's car during the pursuit, and police later found a firearm and spent casings on the road.

During opening statements at trial, the prosecutor told the jury that she anticipated Young's accomplices would testify that Young shot a firearm at an officer during pursuit. The prosecutor also made statements about the dangers of firearms. The jury found Young guilty of six counts: second degree assault, drive-by shooting, first degree robbery, attempting to elude a pursuing police vehicle, first degree unlawful possession of a firearm, and possession of a stolen motor vehicle. The jury also found four firearm sentencing enhancements.

Young appeals his convictions and sentence, arguing prosecutorial misconduct, insufficient evidence, ineffective assistance of counsel, evidentiary violations, cumulative error, and same criminal conduct for second degree assault and drive-by shooting convictions. Young

also submits a statement of additional grounds for review (SAG). We affirm Young's convictions and sentence.

FACTS

I. BACKGROUND

A.      Robbery and Police Pursuit

In March 2022, Young and Rashawn Anderson entered a department store. An employee heard on the radio that people were taking merchandise from the shoe section. The employee went to the shoe section and saw Young and Anderson grabbing merchandise. Young approached the employee and said he was "stressed out by all of the employees around" and he "had a pistol in his pants." 3 Verbatim Rep. of Proc. (VRP) (Jan. 17, 2023) at 267. Young asked if the employee "was going to be the one." *Id.* The employee testified that during this interaction he did not see a firearm nor evidence of a firearm, like a bulge in either Young's or Anderson's waistbands.

The employee walked away and informed a loss prevention supervisor about the situation. The loss prevention supervisor called 911 to report a theft and threat, and he advised employees not to approach Young and Anderson. The loss prevention supervisor saw Young and Anderson exit without paying for their merchandise.

Young and Anderson drove away from the store in a black truck with Megan Eveland. Young drove the truck, Anderson was in the front passenger seat, and Eveland was in the rear passenger seat. A police officer, Gregory Agar, began to follow the truck. Young then sped up significantly, pulling onto the highway, and Agar turned on his siren and lights. After Agar pursued Young on the highway, Young exited into a residential area where he continued to drive fast and erratically. While pursuing Young on Fairmount Avenue and 27th Street, Agar heard two gunshots

2

from ahead of him. Agar testified that he saw sparks coming from beneath the truck soon before he heard the gunshots, but he did not see a firearm or any other objects come from the truck. Several blocks later, Young crashed the truck into a telephone pole. At the time of the crash, the driver's side window was partially rolled down and both passenger side windows were rolled up. Several other witnesses testified that they heard gunshots near this area, and video footage from several houses on the path of pursuit showed the truck had its passenger windows rolled up as it passed.

At the scene of the crash, Young, Anderson, and Eveland were taken into custody.

B.     Evidence

Around the site of the collision, police found several pieces of evidence:

- Two spent 9mm bullet casings on the road between 26th and 27th Street on Fairmount Avenue.
- A 9mm handgun on the road between 32nd and 33rd Street on Fairmount Avenue. At this location, police also found a magazine for a 9mm handgun, an unfired 9mm cartridge, and a laser light handgun accessory.
- About $600 worth of stolen store merchandise in the truck's trunk.
- An unfired 9mm cartridge in the truck's center console.

One officer opined that based on his experience, the location of the firearm debris on the road, including one of the spent casings, was consistent with coming from the driver's side of the vehicle. The officer testified that the firearm was located closer to the passengers' side of the street, though it could have moved across the pavement if thrown from the truck. The police conducted DNA and fingerprint tests on the firearm but found nothing conclusive.

The officers also discovered that the truck's identification number matched one from a stolen vehicle.

## II. PROCEDURAL HISTORY

The State charged Young with six counts: second degree assault with a firearm sentencing enhancement, drive-by shooting, first degree robbery with a firearm sentencing enhancement, attempting to elude a pursuing police vehicle with a firearm sentencing enhancement, first degree unlawful possession of a firearm, and possession of a stolen motor vehicle with a firearm sentencing enhancement.[1]

A.      Pretrial Discussion of Witnesses

In its trial memorandum, the State explained:

> It is unknown at this time if Ms. Eveland will appear to testify at trial. She has repeatedly conveyed a concern for her safety if she cooperates. In her recorded interview, she indicated that the defendant threatened to kill her if she spoke to police, and that he has pointed a firearm at her in the past. If she does not appear, the State will be seeking to admit her written and recorded statements through the Forfeiture by Wrongdoing Doctrine. Additional argument can be heard if she fails to appear, but the State wanted to put the parties on notice that this may be a potential issue to address.

Clerk's Papers (CP) at 20. During a pretrial hearing, the trial court stated that the State would need to prove forfeiture by wrongdoing in order to introduce Eveland's prior statement without calling her as a witness. The trial court also reminded the State that at some point, it would have to give "notice that this witness is not available or is not coming in." 3 VRP (Jan. 11, 2023) at 59. The State replied,

> I don't know. Your Honor, I don't know whether she is going to come in or not.
>      . . . .
> She was subpoenaed. She was personally served, I believe, at her parents' residence via her parent. She has been in communication with our office, but it's sporadic, so I don't know is the answer.

---

[1] The State amended Young's charges several times, ultimately reducing a first degree assault charge to second degree assault.

No. 58105-1-II

*Id.*

B.     State's Opening Statement

During trial, the trial court gave the jury opening instructions:

> It's your duty as a jury to decide the facts in this case based on the evidence presented to you during this trial. . . . [T]he lawyers' statements are not evidence or the law. The evidence is in the testimony and the exhibits. The law is contained in my instructions to you. You must disregard anything the lawyers say that is at odds with the evidence or the law in my instructions.

3 VRP (Jan. 17, 2023) at 244-45. The State began its opening statement:

> A firearm is just an object. In the right hands it can represent safety and security; for example, in the hands of a police officer or a homeowner. But in the wrong hands it represents coiled violence and death. Even the mention of a firearm can bend people to your will, and when that wasn't enough for the defendant, Mr. Young, he resorted to the use of that firearm against a law enforcement officer who was trying to do his job.

*Id.* at 256. During its opening statement, the State also said,

> It is anticipated that you will hear from [Eveland] and [Anderson]. . . . [I]t is anticipated that they will both tell you that the defendant was the shooter, that he was shooting at Deputy Agar, and that he then threw the gun out the window.

*Id.* at 261. The State ultimately did not call Eveland or Anderson to testify during the trial.

On the first day of trial, the State requested a material witness warrant for Anderson because he was incarcerated in Oregon. The State's comments that day demonstrate that it thought Anderson would be able to testify later in the trial. Though the warrant was granted, the State concedes that it is unclear whether Anderson was ever transported from Oregon. Defense counsel explained to the trial court that Anderson had previously entered into an agreement with the State to reduce his charges in exchange for testifying against Young.

On the second day of trial, the State indicated that it would seek a material witness warrant for Eveland after she told the State that she would not testify. The State also indicated it would

claim forfeiture by wrongdoing to introduce Eveland's pretrial statements without her live testimony. But there is no evidence in our record that the State formally brought a motion to admit her pretrial statements based on this theory.

C.      Testimony

Later in the trial, officer Michael Currier testified for the State. He explained that just after the incident in the store, he called the store to establish probable cause, or confirm "the elements of the crime," so that Agar could pursue Young's car. 3 VRP (Jan. 17, 2023) at 306. Currier stated:

> A.      I got the elements of the crime from the caller, advised on the radio that we had PC for Rob I and -- or robbery, and then Agar kind of took over from there.
>
> Q.      Okay. And was one of the reasons that [police] decided to pursue was that a firearm was allegedly involved?
>
> A.      Yes, it's a violent felony crime so . . .

*Id.*

Defense counsel also asked Currier what charges he initially put in his police report. When the State objected for relevance and opinion on the ultimate issue, the trial court discussed the objection with the attorneys outside the presence of the jury. Defense counsel explained that Currier initially listed second degree robbery in his report, which would contradict Currier's testimony that he told Agar probable cause existed for first degree robbery, and could have cast doubt that Young had a firearm. The State countered that Currier was not at the scene of the pursuit, so at the time he only knew that there was the threat of a firearm, which would still constitute second degree robbery. The trial court sustained the State's objection that this line of questioning was irrelevant and confusing to the jury:

> So law enforcement officers' determination at the scene as to whether a particular crime was committed or not usually is not relevant to the jury in terms of making a decision as to whether sufficient evidence is there for all sorts of reasons.

. . . .

I mean, the investigation might not be complete. I think it's -- as [the State] indicated, I think . . . in a situation like that with multiple officers . . . investigating, a particular officer might be able to collect up, you know, evidence to support a particular crime, but then other officers might be investigating and find additional evidence.

So it just -- it doesn't seem to be relevant. I think additionally it is somewhat confusing to the jury in 403.

3 VRP (Jan. 17, 2023) at 314-15.

Defense counsel did not call any witnesses and Young did not testify.

D.    Verdict and Sentencing

Before the jury deliberated, the trial court gave the jury instructions, in part reiterating that "the lawyers' statements are not evidence" and advising the jury to rely only on evidence for its decision. Suppl. 1 VRP (Jan. 20, 2023) at 35. The jury found Young guilty on all counts.

In Young's sentencing memorandum, he argued that his second degree assault and drive-by shooting convictions constituted the same criminal conduct. Relying on case law, the trial court ruled that they were separate crimes.

At his sentencing hearing, Young stated that defense counsel violated his due process rights by failing to provide him with one of the State's offered plea deals before it expired. As support for this claim, Young submitted text messages with his mother that demonstrated he had difficulty reaching his defense counsel before trial. One of these text messages from Young, sent the morning of the first day of trial, reads, "I met with [defense counsel] last night and it went very well I guess the offer was off the table so I didn't meet with her until after it was off the table." CP at 215.

Also attached to these text messages was defense counsel's declaration, which stated that (1) the State made a verbal offer to Young; (2) Young provided a counter offer; (3) the State

rejected Young's counteroffer; and (4) Young rejected the State's final offer and called ready for trial. During the sentencing hearing, defense counsel stated that she talked to Young about all plea offers from the State, but she did not give him the final offer *in writing* before he called ready for trial. The trial court concluded that whether Young was apprised of a plea offer was an argument for appeal.

The trial court determined that the sentences for all of Young's convictions should run concurrently. The standard sentencing range for first degree robbery, the longest in this case, was 129-171 months. However, the firearm enhancements totaled 150 months. During sentencing, the trial court noted that the legislature requires firearm enhancements to run consecutively. The trial court also stated that it did not have discretion to sentence below the standard sentencing ranges in this case without finding mitigating circumstances. Ultimately, the trial court sentenced Young to the high end of the first degree robbery sentencing range (171 months) with the firearm enhancements (150 months), totaling 321 months.

ANALYSIS

I. PROSECUTORIAL MISCONDUCT

Young argues that his convictions should be reversed due to several instances of prosecutorial misconduct. For a prosecutorial misconduct claim, the defendant must prove that the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). To determine whether a prosecutor's remarks were improper, we evaluate the remarks in the context of the prosecution's entire argument. *State v. Anderson*, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009).

When a defendant fails to object to a prosecutor's comments, they waive a prosecutorial misconduct claim unless they show that the comments were improper as well as flagrant and ill intentioned, that a curative instruction would not have remedied any prejudice, and that there is a substantial likelihood the misconduct affected the jury's verdict. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). We "'focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured.'" *State v. Gouley*, 19 Wn. App. 2d 185, 201, 494 P.3d 458 (2021) (quoting *Emery*, 174 Wn.2d at 762).

A.      Opening Statement About Anticipated Testimony

Young argues that the prosecutor committed misconduct by telling the jury during opening statements that the State anticipated Anderson and Eveland would testify that Young shot at Agar and then threw the firearm out of the truck's window. Young concedes that his counsel did not preserve the issue of whether the State's comments about anticipated testimony violated his constitutional right to confront witnesses where the testimony never occurred. However, he contends that the State's violation of his constitutional confrontation rights demonstrates the egregiousness of its misconduct.

Young argues that the prosecutor's description of Anderson and Eveland's anticipated testimony was so prejudicial that reversal is required. However, Young fails to directly argue that the alleged misconduct could not have been cured by instructions to the jury. Young avoids directly addressing this element of the waiver analysis in his briefing, instead discussing *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), as an example of a confrontation clause violation that required reversal. But in this prosecutorial misconduct analysis, Young has

9

the burden to demonstrate that the error alleged here could not have been cured. Young fails to meet that burden.

The State paraphrased the anticipated testimony in an opening statement that the trial court explained was not evidence. And there was significant circumstantial evidence that Young was in fact the one who had the firearm and shot at the officer: Young told the store employee he had a gun, his window in the truck was rolled down while the passenger windows were not, and most of the firearm debris was found on the driver's side of the road. Additionally, the State's unfulfilled promise to the jury that it would produce Anderson's and Eveland's testimony was just as likely to be harmful to the State's case. Thus, the trial court's limiting instructions, at both opening and closing, that jurors should not view attorneys' comments as evidence were sufficient to cure any limited prejudice from the promise of testimony consistent with other evidence the jury did receive. Young has not demonstrated incurability.

Even if the limiting instructions could not cure potential prejudice, the prosecutor's comment about Anderson's and Eveland's anticipated testimony did not constitute misconduct because it was not made in bad faith. Generally, a prosecutor may outline anticipated evidence in their opening statement as long as they have a good faith belief the evidence will be produced at trial. *State v. Campbell*, 103 Wn.2d 1, 15-16, 691 P.2d 929 (1984). The defendant bears the burden of showing that the prosecutor acted in bad faith. *Id.* at 16.

There is evidence on the record that particularly at the time the prosecutor made opening statements, she both intended and later attempted, to call Anderson and Eveland as witnesses. Thus, the prosecutor's statement was not the kind of flagrant and ill-intentioned conduct that rises to the level of prosecutorial misconduct.

10

B.  Opening Statement About Firearms

Young also argues that the State committed prosecutorial misconduct during its opening statements by remarking that a firearm "in the wrong hands . . . represents coiled violence and death" and "can bend people to your will." 3 VRP (Jan. 17, 2023) at 256. Young claims that these statements were inflammatory and an improper appeal to the jury's passion and prejudice regarding a sensitive political issue. We disagree.

Generally, a prosecutor should not make deliberate appeals to the jury's passion and prejudices, nor encourage the jury to decide the verdict based on sympathies instead of on properly admitted evidence. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 711, 286 P.3d 673 (2012) (plurality opinion); *see State v. Fedoruk*, 184 Wn. App. 866, 890, 339 P.3d 233 (2014). However, a "'prosecutor is not muted because the acts committed arouse natural indignation.'" *State v. Borboa*, 157 Wn.2d 108, 123, 135 P.3d 469 (2006) (quoting *State v. Fleetwood*, 75 Wn.2d 80, 84, 448 P.2d 502 (1968)).

Young argues that the prosecutor's statements about firearms are similar to statements about the "war on drugs" that courts have historically considered prosecutorial misconduct. However, in those cases, prosecutors repeatedly connected the defendants' alleged conduct to a broader social cause—the "[w]ar on [d]rugs"—thereby "urging [jurors] to send a message and strike a blow to the drug problem" by convicting the defendants. *State v. Ramos*, 164 Wn. App. 327, 339, 263 P.3d 1268 (2011) ; *see State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020); *State v. Echevarria*, 71 Wn. App. 595, 599, 860 P.2d 420 (1993).

Here, possession of firearms may implicate a political issue, but the prosecutor's comments did not connect Young's conduct to a broader social cause, nor did they encourage the jury to

promote such a cause with their verdict. Instead, the prosecutor's comments emphasized the dangerous nature of Young's actions; Young both verbally threatened a store employee with a firearm and shot a firearm at Agar during the vehicle pursuit. Even if the prosecutor's comments appealed to the jury's passions to some degree, they were not so flagrant and ill intentioned as to constitute prosecutorial misconduct.

## II. SUFFICIENCY OF THE EVIDENCE

Young argues that the State failed to provide sufficient evidence showing that Young possessed a firearm during the robbery itself, so the firearm enhancement to the robbery conviction was invalid. In other words, Young argues that even if there was a firearm in the truck he used to leave the store, there was no nexus between that firearm and the robbery. In his SAG, Young also argues that sufficient evidence did not support his first degree robbery conviction because no evidence demonstrated that he possessed or displayed a firearm at all. Young contends that "words alone are insufficient to constitute" a display of a firearm for the purpose of first degree robbery. SAG at 1. And the evidence that the State put on—that a firearm was found on a street along the path of Young's vehicle without any DNA, fingerprints, or eyewitnesses directly connecting Young to the firearm—was insufficient to demonstrate possession. We disagree.

In a challenge to the sufficiency of the evidence, our review is "highly deferential to the jury's decision." *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014). We ask whether, taking the State's evidence as true and drawing all reasonable inferences in the State's favor, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Altman*, 23 Wn. App. 2d 705, 710, 520 P.3d 61 (2022). Circumstantial evidence and direct evidence are equally reliable under this standard. *State v. Liden*, 138 Wn. App. 110, 117, 156 P.3d

259 (2007). "We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence." *State v. Truong*, 168 Wn. App. 529, 534, 277 P.3d 74 (2012).

Under RCW 9A.56.190, a person commits robbery when they unlawfully take another person's personal property in that person's presence and against their will by the use or threatened use of immediate force, violence, or fear of injury. In a robbery, the taking is ongoing until the defendant has escaped. *Truong*, 168 Wn. App. at 535-36. "The definition of robbery thus includes 'violence during flight immediately following the taking.'" *Id.* at 536 (quoting *State v. Manchester*, 57 Wn. App. 765, 770, 790 P.2d 217 (1990)). Under RCW 9A.56.200(1)(a)(i), a person commits first degree robbery when "[i]n the commission of a robbery or of immediate flight therefrom," they are "armed with a deadly weapon." RCW 9.94A.533(3) provides for a sentencing enhancement where the person was armed with a firearm during a robbery.

Here, there was sufficient evidence for a rational juror to conclude that Young used force and possessed a firearm in the store and when fleeing. Young told a store employee that he had a firearm and used threatening language to keep the employee from interfering with the theft. Soon after, while Young attempted to escape from police pursuit, officer Agar heard two gunshots from the truck in front of him. Police found two spent 9mm casings and a 9mm firearm on the street of the pursuit, as well as an unfired 9mm cartridge in the center console of the truck Young was driving. Young's window was the only unrolled window at the time of the crash, and several videos from houses along the path of pursuit showed that the passenger windows were not rolled down. This is enough circumstantial evidence for a rational juror to reasonably infer that Young possessed a firearm in the store and during pursuit, and he used the firearm to shoot at Agar in an

attempt to flee. Especially because robbery includes actions taken during escape, both Young's

first degree robbery conviction and the firearm enhancement are supported by sufficient evidence.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Young argues that his defense counsel at trial was ineffective. The Sixth Amendment to

the United States Constitution and article I, section 22 of the Washington Constitution guarantee

criminal defendants effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d

1260 (2011). To determine whether a defendant received effective representation, we review the

entire record. *State v. Carson*, 184 Wn.2d 207, 215-16, 357 P.3d 1064 (2015).

For an ineffective assistance of counsel claim, the defendant must demonstrate both that

his counsel's performance at trial was deficient, and that this deficiency had a prejudicial effect.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish

deficient performance, the defendant must show that counsel's conduct was not supported by

legitimate strategic or tactical reasons. *Emery*, 174 Wn.2d at 755. There is a strong presumption

that defense counsel exercised reasonable professional judgment to render adequate assistance.

*Carson*, 184 Wn.2d at 216. Prejudice exists if there is a "'reasonable probability'" that the result

of the proceeding would have been different had defense counsel not performed deficiently. *State*

*v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (quoting *Strickland*, 446 U.S. at 694). Because

the defendant must show both deficiency and prejudice, a failure to demonstrate either prong will

end our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

If a defendant claims that their defense counsel was ineffective for failure to object, then

"'the defendant must show that the objection would likely have succeeded.'" *State v. Vazquez*, 198

Wn.2d 239, 248-49, 494 P.3d 424 (2021) (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438

P.3d 541 (2019)). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *Crow*, 8 Wn. App. 2d at 508. However, defense counsel performs deficiently if they fail to object to inadmissible evidence without a strategic reason. *Id.* If this happens, defense counsel has performed deficiently, and reversal is required if the defendant can show the result would likely have been different without the inadmissible evidence. *Id.* at 509. Even several failures to object do not necessarily constitute deficient performance. *Vazquez*, 198 Wn.2d at 250.

A. Failure to Object to Prosecutor's Statements About Anticipated Testimony or Move for Mistrial

Young argues that his defense counsel was ineffective for failing to object that the prosecutor's opening statement about Anderson's and Eveland's anticipated testimony violated Young's constitutional right to confront witnesses against him or move for mistrial on that basis. As discussed above, the prosecutor's comments about Anderson's and Eveland's anticipated testimony were not prejudicial because they were cured by limiting instructions to the jury. Young's defense counsel's failure to object or move for mistrial likely did not impact the outcome of the proceeding and therefore did not constitute ineffective assistance of counsel.

B. Failure to Object to Currier's Testimony

Young argues that his defense counsel was ineffective for failing to object to officer Currier's testimony that he had probable cause for first degree robbery which was a "violent felony crime," supporting police pursuit. 3 VRP (Jan. 17, 2023) at 306. Young contends that these statements were impermissible legal opinions from Currier.

Opinion testimony about the guilt of the defendant invades the exclusive province of the jury and may be reversible error because it violates the defendant's right to a trial by jury. *State v.*

15

*Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). To decide whether a witness's statements are impermissible opinion testimony, we consider the circumstances of the case, including "'(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.'" *Id.* at 928 (internal quotation marks omitted) (quoting *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001)). A law enforcement officer's opinion testimony may be especially prejudicial because it can have "a special aura of reliability." *Id.*

Here, the prosecutor asked about officer Currier's involvement in the case, and Currier stated that he called the store immediately after the robbery and established probable cause for "Rob I," meaning first-degree robbery "or robbery." 3 VRP (Jan. 17, 2023) at 306. Currier also stated that robbery is a "violent felony crime." *Id.*

Although Currier was a law enforcement officer, he was only tangentially involved in the investigation. Though Currier listed the nature of the crimes that Young may have committed, he did not comment directly on Young's credibility or guilt. The jury was already aware that Young was charged with first degree robbery; he was on trial for first degree robbery. It would follow that the officers likely had probable cause for that crime in order to make an arrest. And Currier's comment that robbery is a "violent felony crime" discusses the nature of the crime itself, not Young's guilt. *Id.* It is unlikely that the jury would view these brief comments alone as Currier's opinion of guilt. In context, it seems clear the jury would have been focused on testimony from officers involved in the pursuit or the investigation of the crash scene, or other evidence collected after the police pursuit.

16

Even if the trial court would have sustained an objection to Currier's testimony, it is unlikely that the outcome of the trial would have been different if his comments were excluded in light of all of the other evidence, including the testimony of the store employees and other officers.

C.      Failure to Present Plea Deal

In his SAG, Young argues that he received ineffective assistance of counsel because his defense counsel did not inform him about a plea deal before it expired.

On this record, Young has not established sufficient facts for us to conclude that his counsel acted deficiently in light of counsel's in-court assurances and sworn declaration that she presented the final plea offer to him and he rejected it. His counsel's statements to the trial court and sworn declaration provided that counsel conveyed all offers to him, including the State's final offer. To the extent that Young wishes to offer additional evidence not in this record, the proper vehicle for doing so is a personal restraint petition (PRP).

IV. EVIDENTIARY CLAIMS

Young argues that the trial court erred by preventing defense counsel from asking about Currier's police report. He argues that this violated his right to present a defense.

We apply a two-step standard of review when considering whether the trial court violated a defendant's right to present a defense by excluding evidence. *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019). We review the trial court's evidentiary decision under an abuse of discretion standard. *State v. Jennings*, 199 Wn.2d 53, 58, 502 P.3d 1255 (2022). "'A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" *Arndt*, 194 Wn.2d at 799 (quoting *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007)).

If the exclusion of evidence was either within the trial court's discretion or an abuse of discretion, but harmless, then we assess whether it violated the defendant's constitutional right to present a defense. *Jennings*, 199 Wn.2d at 59. We consider "de novo whether the exclusion of evidence violated the defendant's constitutional right to present a defense." *Id.* at 58. However, this right is not absolute. *Arndt*, 194 Wn.2d at 812. "[T]he State's interest in excluding evidence must be balanced against the defendant's need for the information sought to be admitted." *Id.*

A.      Evidentiary Decision

In this case, we first must assess whether the trial court abused its discretion by preventing defense counsel from asking about the initial second degree robbery charge listed in Currier's police report to highlight the difference between his initial assessment and his testimony that there was probable cause for first degree robbery.

Evidence must be relevant to be admissible. ER 402. Additionally, "[i]t is well settled that neither party may impeach a witness on a collateral issue; that is, on facts not directly relevant to the trial issue." *State v. Aguirre*, 168 Wn.2d 350, 362, 229 P.3d 669, 675 (2010). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The threshold for admissibility is very low; "[e]ven minimally relevant evidence is admissible." *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). However, under ER 403, the trial court may exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

Here, the trial court prevented defense counsel from asking Currier what crimes he originally listed in his police report. The trial court concluded that this evidence was irrelevant to

the jury because it did not go to the ultimate issue of whether Young's charges were supported by sufficient evidence. Currier was not at the scene of the crime, and several other witnesses who heard gunshots from Young's truck testified at trial. Currier was not a key witness for the State, and his testimony did not go to the ultimate issue of whether evidence beyond a reasonable doubt supported Young's charges. Thus, the trial court was correct. Which degree of robbery Currier initially put in his police report is immaterial to whether Young actually committed the crimes that he was charged with at trial.

The trial court also concluded that Currier's testimony should be excluded under ER 403 because it would be confusing to the jury. The trial court explained that where multiple officers investigate a crime, initial charges may change due to additional evidence found during investigation. The trial court did not abuse its discretion by excluding this evidence under ER 403 because the jury reasonably may have been confused by multiple references to charges, not at issue at trial, that were listed in a police report before investigation was complete.

And even if the court abused its discretion, the trial court's limitation on the scope of Currier's cross-examination was not prejudicial. Currier was not an essential witness to the case; there were multiple other officers and civilians who were actually at the scene of the crime. It is exceedingly unlikely that the outcome of the trial would have been different if Currier's testimony about his police report were not excluded.

B.    Constitutional Right to Present a Defense

To determine whether a trial court violated a defendant's constitutional right to confront witnesses by limiting the scope of cross-examination, we apply a three part test:

> "First, the evidence must be of at least minimal relevance. Second, if relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness

of the fact-finding process at trial. Finally, the State's interest to exclude prejudicial evidence must be balanced against the defendant's need for the information sought, and only if the State's interest outweighs the defendant's need can otherwise relevant information be withheld."

*State v. Lee*, 188 Wn.2d 473, 488, 396 P.3d 316 (2017) (quoting *Darden*, 145 Wn.2d at 622).

Generally, "the more essential the witness is to the prosecution's case, the more latitude the defense should be given to explore fundamental elements such as motive, bias, [or] credibility." *Darden*, 145 Wn.2d at 619.

Here, as explained above, Currier's testimony about the police report was not relevant. Additionally, given that Currier's report lacked relevance and had significant potential for confusing the jury about Young's charges, the State met its burden to show that the testimony was prejudicial. The State's interest in excluding such evidence outweighed its relevance. Thus, the trial court did not violate Young's constitutional rights by preventing defense counsel from cross-examining Currier about the charges listed in his police report.

In his SAG, Young also argues that the trial court erred by denying him access to results from a paraffin test and not requiring the State to perform a fingerprint or DNA test on gloves found in the truck. Because these discovery issues were not raised at the trial court, we decline to address them under RAP 2.5(a). If Young has additional facts he wants to raise with respect to these issues, the proper vehicle is a PRP.

V. CUMULATIVE ERROR

Young asserts that the alleged errors in this case cumulatively require a new trial. Because we find no errors in Young's trial, the cumulative error doctrine does not apply in this case.

VI. SAME CRIMINAL CONDUCT

Young argues that second degree assault and drive-by shooting convictions involve the same criminal conduct and should count as one crime for the purpose of calculating Young's offender score. We disagree.

When calculating an offender score, courts count all current and prior offenses separately unless multiple offenses "encompass the same criminal conduct." RCW 9.94A.589(1)(a). To constitute the same criminal conduct, two or more criminal offenses must (1) have the same objective intent, (2) occur at the same time and place, and (3) involve the same victim. *Id.* The defendant bears the burden to establish each same criminal conduct element. *State v. Hatt*, 11 Wn. App. 2d 113, 142, 452 P.3d 577 (2019). If "some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." RCW 9.94A.589(1)(a). Where the record adequately supports either conclusion on a same criminal conduct determination, "the matter lies in the court's discretion." *State v. Graciano*, 176 Wn.2d 531, 538, 295 P.3d 219 (2013).

A person commits second degree assault when they assault another person with a deadly weapon. RCW 9A.36.021(1)(c). Under the common law, the mens rea for second degree assault is "'specific intent either to create apprehension of bodily harm or to cause bodily harm.'" *State v. Abuan*, 161 Wn. App. 135, 154-55, 257 P.3d 1 (2011) (quoting *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995)). A person commits a drive-by shooting when they recklessly discharge a firearm from a motor vehicle "in a manner which creates a substantial risk of death or serious physical injury to another person." RCW 9A.36.045(1).

The Washington legislature has recognized that drive-by shooting "presents a threat to the safety of the public that is not adequately addressed by other statutes." *State v. Rodgers*, 146 Wn.2d 55, 62, 43 P.3d 1 (2002). Additionally, the Washington Supreme Court stated that "[a]lthough a drive-by shooting may cause fear of bodily injury, bodily injury, or even death, such a result is not required for conviction. Drive-by shooting does not require a victim; it requires only that reckless conduct creates a risk that a person might be injured." *In re Pers. Restraint of Bowman*, 162 Wn.2d 325, 332, 172 P.3d 681 (2007). Thus, the victim of a drive-by shooting is the general public put in danger by the reckless conduct.

Here, Young's second degree assault and drive-by shooting offenses involved different victims. Agar was the victim of Young's second degree assault, as Young shot a firearm at him during the vehicle pursuit. However, the victim of Young's drive-by shooting was the general public. Young argues that under the facts of this case, the general public was not endangered, only Agar, so here the victims of the crimes were the same. But this ignores that when he shot out of the car, Young was driving through a residential neighborhood, so his shots undoubtedly endangered others. Thus, the trial court did not err when it declined to find second degree assault and drive-by shooting were the same criminal conduct for purposes of calculating Young's offender score.

## VII. Consecutive Firearm Enhancements

In his SAG, Young argues that the trial court erred by stating that it was required to sentence Young's firearm enhancements consecutively. However, under RCW 9.94A.533(3)(e), all mandatory firearm enhancements must run consecutively both to each other and to the sentences for the underlying crimes. The trial court does not have discretion to impose an exceptional

No. 58105-1-II

sentence on an adult by ordering firearm sentencing enhancements to run concurrently. *State v. Kelly*, 25 Wn. App. 2d 879, 887, 526 P.3d 39 (2023) The trial court did not err by sentencing Young to consecutive firearm enhancements.

CONCLUSION

We affirm Young's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

LEE, J.

CRUSER, C.J.